GRAND TRUNK WESTERN·RAILROAD COMPANY, Appellant,
vs. LAHIFF and others, Respondents.

*May 2—June 4, 1935.*

458

For the appellant there was a brief by *Bottum, Hudnall, Lecher, Michael & Whyte,* and oral argument by *Suel O. Arnold,* all of Milwaukee.

For the respondents there was a brief by *Sanderson & Stapleton* of Sturgeon Bay, and oral argument by *Thomas A. Sanderson.*

WICKHEM, J. Plaintiff seeks to recover money paid under a mistake of fact. The mistake alleged is the mutual belief of the parties that one William Lahiff, husband and father, respectively, of defendants, lost his life at the time of the sinking of the car ferry "Milwaukee," on October 22, 1929. At the time of the accident, W. Leahy was carried on the records as a fireman. The company had no record of the crew except a list of names. The car ferry was owned by the Grand Trunk Milwaukee Car Ferry Company, a subsidiary of plaintiff. A few days after the sinking of the car ferry, plaintiff received a letter from T. F. Lahiff, Chicago, stating that he had a brother, W. H. Lahiff, who also went under the name of Leahy; that a Wm. Lahiff was reported as having been lost in the sinking of the car ferry, and that he was anxious concerning the safety of his brother. At the same time another brother, A. J. Lahiff, Marinette, made a similar inquiry.

· Wm. Lahiff had married the defendant, Selma Lahiff, some fourteen years prior to the trial, but the parties had separated, and defendant had not heard from him for seven years prior to the sinking of the car ferry. She never heard from him after this date. After the sinking of the ship an action was brought in the district court of the United States, for the Eastern district of Wisconsin, to limit the liability of the plaintiff. In that action Selma Lahiff, as administratrix, together with other dependents of deceased members of the crew, intervened seeking damages. On January 1, 1930, one Blackwell, an employee of the plaintiff, made an investigation of the claim of Selma Lahiff. Prior to the decision in the action, plaintiff had set aside a fund of $80,000, which it denominated a sympathetic allowance, and arranged to distribute this to the dependents of those who lost their lives at the time of the sinking of the car ferry. The fund was divided according to the number of dependents left and the age of the employee who drowned. On April 16, 1931, plaintiff paid defendant Selma Lahiff the sum of $4,000, and received a release of all claims. In November, 1931, plaintiff was informed that one Nellie Leahy, of Cork, Ireland, claimed to be the widow of William Leahy, who lost his life in the car ferry disaster. Plaintiff made a further investigation, which satisfied it that Wm. Lahiff, husband of Selma Lahiff, was not a member of the crew. The special verdict consisted of three questions. In the first question, the jury found that the fireman, carried on the crew rolls as Wm. Leahy, was actually Wm. Lahiff, husband of the defendant Selma Lahiff. In the second question the jury found that the settlement of April 16, 1931, was made in good faith, both parties believing that Wm. Lahiff had lost his life in the sinking of the car ferry. In the third question the jury found that the payment so made was in satisfaction and discharge of defendant's claims as

administratrix, set forth· in the legal action commenced in the United States district court.

A careful examination of the record convinces us that there is no evidence that Wm. Lahiff was lost in the car ferry disaster./ In fact, the uncontroverted and unimpeached testimony of three disinterested witnesses is to the effect that Lahiff was alive after thé date of the disaster. The depositions of Lahiff's brother and of an acquaintance in Chicago, and also that of an employee of the Lake Carriers' Association, are all to the effect that they saw and talked to Wm. Lahiff some two years after the accident. Two of the employees of the Car Ferry Company, after examining photographs of Wm. Lahiff, stated that he never was on the car ferry. These employees identified pictures of Wm. Leahy, of Cork, Ireland, as the person who was lost. Lahiff was a cook. Leahy was a fireman. There was literally no evidence that Lahiff was on the boat, unless the evidence that he sometimes used the name of Leahy be considered to create such a possibility. The jury could not disregard unambiguous and unimpeached testimony of disinterested witnesses that Lahiff survived the disaster. That the parties both acted in good faith, believing that Lahiff had lost his life by the sinking of the car ferry, is not open to doubt. That this was an erroneous assumption is clear.

In the light of the foregoing, two questions remain to be considered: First, was the payment made in settlement or compromise of litigation in the federal court, and, if so, has this fact legal materiality in this action? Second, was plaintiff guilty of a want of diligence in investigating the accident and establishing the identity of Leahy, and, if so, does this preclude a recovery?

With respect to the first question, we are satisfied that the evidence sustains the conclusion that the payment in question was made as the consideration for a compromise of the

pending suit in federal court. This, however, does not solve the difficulty. It is the rule in this state that a compromise may be set aside for mutual mistake of fact. *Kercheval v. Doty,* 31 Wis. 476; *Jackowski v. Illinois Steel Co.* 103 Wis. 448, 79 N. W. 757; *Kowalke v. Milwaukee E. R. & L. Co.* 103 Wis. 472, 79 N. W. 762; *Steffen v. Supreme Assembly of Defenders,* 130 Wis. 485, 110 N. W. 401; *Galusha v. Sherman,* 105 Wis. 263, 81 N. W. 495; *Conant v. Estate of Kimball,* 95 Wis. 550, 70 N. W. 74; *Wheeler v. Seamans,* 123 Wis. 573, 102 N. W. 28; *Richtman v. Watson,* 150 Wis. 385, 136 N. W. 797; *Hurd v. Hall,* 12 Wis. *112; *Moehlenpah v. Mayhew,* 138 Wis. 561, 119 N. W. 826. Courts have met great difficulties in the attempt adequately to define the term "mistake of fact," as it is used to describe a prerequisite for rescission or for the recovery of money paid. In *Kowalke v. Milwaukee E. R. & L. Co., supra,* the court adopts the definition of Pomeroy, Eq. Jur. § 839: "An unconscious ignorance or forgetfulness of the existence or nonexistence of a fact, past or present, material to the contract." The court in that case proceeds to analyze this definition, and the first requisite is that the "ignorance must be unconscious; that is, not a mental state of conscious want of knowledge whether a fact which may or may not exist does so." In other words, where a person enters into a contract or makes a payment, consciously ignorant of a fact, but meaning to waive all inquiry into it, or waives an investigation after his attention has been called to it, he is not in mistake, in the legal sense. In such a situation it is the intention of the parties to accept the consequences of uncertainty. Thus in the *Kowalke Case,* plaintiff, a woman, had suffered injury under circumstances making likely the liability of defendant for her damages. The day following the accident plaintiff's husband applied to defendant for settlement of the damage, stating that she was pregnant. There-

upon defendant's surgeon secured the attendance of her family physician. This examination disclosed only slight bruises, but plaintiff was at that time having a slight uterine hemorrhage. The question of her pregnancy was raised and an examination proposed. Plaintiff denied her pregnancy, stating that she was sure no such condition existed, and refused to submit to an examination. In this situation a settlement was effected. It turned out that plaintiff was actually pregnant and she later suffered a miscarriage. The court held that there was no such mistake as would warrant rescission of the agreement to settle. The effect of plaintiff's injuries was problematical and conjectural. "That very uncertainty entered into the compromise made, and was the consideration of a certain sum on one side, and the surrender of any larger sum on the other." The court points out again the distinction between "unconscious ignorance" which is a prerequisite of such a mistake as the law will give legal significance to, and the mental state of consciousness of ignorance whether the fact exists or not, where, attention being called to the subject, there is a waiver of any investigation of it. The court held the plaintiff to be in the latter condition. In this situation she deliberately discounted the uncertainties by entering into a contract of compromise.

In *Meeme Mut. H. P. F. Ins. Co. v. Lorfeld,* 194 Wis. 322, 216 N. W. 507, the action was to recover payment made to the assignee of the insured on a fire loss. After the payment the insured confessed that he had set the fire. In an action to recover on the theory that the payment was made under a mistake of fact, the trial court found that when the payment was made, neither party had any actual knowledge or any satisfactory evidence that the fire was set, but both had suspicions on the subject. The court held that the payment under such circumstances was not made under a mistake of fact; that there was no such unconscious ignorance,

but rather a waiver of investigation after the attention of the parties had been called to the possibility of the existence of the fact. With full knowledge that the fire might have been of incendiary origin, the plaintiff paid, and must be taken to have elected to discount the possibilities of an incendiary fire. This circumstance was held to make recovery impossible.

It will thus be seen that while a compromise may be set aside for mistake of fact, the mistake must not·relate to one of the uncertainties of which the parties were conscious and which it was the purpose of the contract to resolve and put at rest. If, for example, both parties to this contract, believing that Lahiff had lost his life in the disaster and wholly unconscious of any doubts or misgivings upon this subject, agreed to the settlement for purposes of resolving uncertainties as to the legal liability of plaintiff, or the amount of damages, or both, there was a mutual mistake as defined in the *Kowalke Case,* and plaintiff may recover the payment. If, on the other hand, this was an uncertainty of which the parties were conscious, and which it was the purpose of the parties to resolve without investigation, then the law as applied in the *Kowalke* and *Meeme Cases* applies, and plaintiff may not recover.

While the matter is not free from difficulty, it is our conclusion that there was such a mistake of fact as will entitle plaintiff to recover. A consideration of the record indicates that neither of the parties was "in a mental state of conscious want of knowledge." Each assumed that Lahiff had lost his life in the disaster, and neither approached the settlement with the consciousness of ignorance or doubt as to the existence of this fact. It is clear that no controversy ever existed between the parties as to the identity of the deceased employee, and that no payment would have been made had the facts in this respect been known. The amount paid was

not in any way modified or affected by recognition of any uncertainty on this point. It is our conclusion that there was such a mistake of fact as to entitle plaintiff to a recovery of the money paid by it.

The next question is whether plaintiff is precluded from recovery by reason of a negligent failure properly to investigate the facts. There is some uncertainty in the cases on this subject, but we think a careful consideration of the case of *Hurd v. Hall, supra,* makes clear the precise relation of negligence to the subject. In that case it was stated:

"This ignorance of facts must be excusable, that is, it must not arise from the intentional neglect of the party to investigate them. The rule which formerly prevailed, that if a party might, by the exercise of reasonable diligence, have ascertained the facts he would not, on the ground of ignorance or mistake, be relieved from his contract, has of late been very much relaxed. The latter cases establish the doctrine, that whenever there is a clear *bona fide* mistake, ignorance or forgetfulness of facts, the contract may, on that account, be avoided. The following cases illustrate the doctrine that mere ignorance or forgetfulness of facts, without intentional neglect to examine them, excuses, and, in some particulars, seem to bear strongly on the present case."

While the court, in the *Kowalke Case,* states that ignorance must not be due to negligence, its reference applies to actions in equity for rescission. Even as applied to such cases, the rule as thus baldly stated has been criticized. Pomeroy, Eq. Jur. § 856; Williston, Contracts, § 1596. The rule as stated in the *Hurd Case* governs actions at law to recover money paid under a mistake of fact. As negligence is defined in the *Hurd Case,* we perceive no distinction between "intentional neglect to investigate" and conscious ignorance of fact coupled with a waiver of inquiry into it. That freedom from negligence in the sense of failure to use reasonable diligence to investigate and ascertain the facts is

not an essential to recovery in actions at law to recover for money paid under a mistake of fact, is squarely held in *Chicago, M. & St. P. R. Co. v. Malleable I. R. Co.* 187 Wis. 93, 203 N. W. 738, in which the distinction between actions in equity to rescind and actions at law to recover money paid under mistake is expressly recognized. The court there says:

"The principle invoked by the trial court in this case is applicable in many classes of actions where it is sought to rescind or avoid contracts, but it is not applicable in actions brought to recover money paid by mistake. . . . The rule is quite well settled that care and diligence to ascertain the facts on the part of the party making payment is not an essential element of his right to recover if in fact he made the payment upon a mistaken understanding of the facts. *Kingston Bank v. Eltinge,* 40 N. Y. 391; *Simms v. Vick,* 151 N. C. 78, 65 S. E. 621, 24 L. R. A. (N. S.) 517; note in 94 Am. State Rep. p. 415; 21 R. C. L. pp. 168, 169."

The foregoing considerations compel a reversal of the judgment.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for plaintiff in accordance with this opinion.