**TERRA NOVA INSURANCE COMPANY, the Sovereign Marine and General Insurance Company, Ltd. and Certain Underwriters at Lloyd's Nominee: George Miller, Plaintiffs,**

v.

**ASSOCIATES COMMERCIAL CORPORATION and Brian Scharbarth, Defendants.**

**Civ. A. No. 87–C–1153.**

United States District Court, E.D. Wisconsin.

Oct. 26, 1988.

William J. Corrigan, Menn, Nelson, Sharrett, Teetaert & Beisenstein, Appleton, Wis., for plaintiffs.

Michael J. Lawton, Lathrop & Clark, Madison, Wis., for Associates Commercial Corp.

Brian Scharbarth, Brillion, Wis., pro se.

## ORDER

TERENCE T. EVANS, District Judge.

It all began in February, 1982. Brian Scharbarth's truck started tormenting him with mechanical troubles on a run from Wisconsin to California. Lesser truckers might have gotten their vehicles repaired, but Scharbarth arranged to have his stolen. Right there at a truck stop in Sparks, Nevada. Sierra Sid's, to be exact. He did it for the insurance money. And before you could say "chop shop," the truck was in one in Albuquerque, New Mexico, where it was quickly stripped and dismantled. Scharbarth, just as quickly, made a claim

for his "loss" with his insurers, the plaintiffs in this suit.

Suspecting fraud, the insurers put a gumshoe on the case. Investigator Heinz A. Rost came back with a blunt report. "My feeling about this claim," he told his superiors, "is about the same as someone trying to make me swallow a 3 lb. fish. First of all, I dislike fish, second, I surely wouldn't try to swallow it whole, especially when it offends my sense of smell the way this claim does."

That was April 1982. But the next month, the insurance companies coughed up anyway. They sent a check for $62,210 to Scharbarth and the payee on his policy, Associates Commercial Corporation, which held a security interest in the truck. The companies paid up because they were worried about their duty to act in good faith in their dealings with Scharbarth. In counsel's words, they "did not want to unduly delay the settlement of his claim." Call the payment lunkheaded, or call it bright. I call it a business decision.

Associates knew nothing about Scharbarth's fraud. It kept the amount that Scharbarth owed on the truck, $49,647.51, and it conveyed its interest in the vehicle to the plaintiffs. Another $11,500 went for a replacement tractor unit. Scharbarth personally netted only $1,057.49 of the $62,210, reminding us, yet again, that crime doesn't pay.[1]

Enter the G-men. Like Rost (no ichthyophagist he), the FBI had also been sniffing into the incident at Sierra Sid's. The Bureau's legwork eventually paid off: In October 1985, a grand jury indicted Scharbarth for mail fraud. He pleaded guilty, and I sentenced him to two years in the big house on February 10, 1986.

On April 16, 1986, the plaintiffs' lawyer wrote to Associates looking for the return of $62,210. Until it received that letter, Associates had remained in the dark regarding Scharbarth's ugly machinations. Even after learning the dark truth, though, Associates wouldn't part with a dime. So the plaintiffs sued in October 1987. Where

---

1. The remaining five dollars are not important to this story, or so it seems.

lesser litigants might have settled, Associates and the plaintiffs have now moved for summary judgment.

In the circumstances of this dispute—where an innocent party received payment from insurers on a claim that the insurers strongly suspected was fraudulent four years earlier—I will grant summary judgment in favor of Associates. At the same time, however, I will grant the plaintiffs summary judgment against Scharbarth, who admitted his fraud in his answer to the complaint. My reasons follow.

Diversity jurisdiction exists because the plaintiffs are English concerns, Associates is a Delaware corporation with offices in Wisconsin, and Scharbarth is a Wisconsin resident. Each plaintiff provided one third of the coverage on a policy issued to Scharbarth to insure his 1981 Kenworth semitractor truck. The policy excluded payment in the event that the insured person converted, embezzled, or secreted the insured property or voluntarily parted with title or possession. The "assured" (as the English say) was Brian Scharbarth d/b/a Jafak Transport, and the loss payee was Associates Commercial Corporation. Associates, which had acquired a security interest in the truck by purchasing the loan installment note, insisted that Scharbarth take out insurance on the truck and name Associates as the payee.

According to the plaintiffs' lawyer, "Only after he was convicted in February 1986 did the plaintiffs have the proof that Mr. Scharbarth was involved in the alleged theft and, therefore, that there was no coverage for the loss of the truck." But this statement is somewhat misleading. Only after the conviction did the plaintiffs have proof *beyond a reasonable doubt* that Scharbarth had defrauded them in February 1982. Weeks before they paid his claim, however, they strongly suspected that Scharbarth had arranged for the theft.

The plaintiffs' affairs in this matter were handled by Casualty Underwriters, Inc., which in turn delegated responsibility to Floyd Johnson of Commercial Equipment Adjustors, Inc. Mr. Johnson testified at a deposition that his firm checked out Schar-

barth's claim and that he hired three outside investigators as well—Gar Riddle, Don Kluxdal, and Mr. Rost. Mr. Riddle reported to Mr. Johnson that "[w]hile this may be a legitimate theft report, there are several discrepancies [in Scharbarth's story] which stand out." Mr. Riddle found it suspicious, for example, that Scharbarth never told any employee at Sierra Sid's about the theft.

Mr. Kluxdal's initial report did not contain any smoking guns, though he did see fit to interview Scharbarth's passenger and ask him whether the two of them had anything to do with the theft. (The answer was "no.") In a later report to Mr. Johnson, Mr. Kluxdal wrote, "I guess I probably will never feel satisfied your insured wasn't involved, simply because he is not accustomed to telling the truth." Mr. Kluxdal's recommendation was this:

> To sum it all up if we were to deny the claim on what information we have, we wouldn't win. We can't prove anything beyond a reasonable doubt that your insured was involved. Since this can't be done and after considerable length of time, we can see no alternative but to settle.

Mr. Rost's report raised a red flag, as suggested by the colorful quotation at the beginning of this opinion. "All verifiable evidence indicates the insured is not telling the truth," Mr. Rost also said. He recommended to Mr. Johnson that "this claim not be paid without clarification by the insured to the satisfaction of Mr. F.A. Johnson and this investigator." Mr. Johnson discussed the findings of his investigators with Casualty Underwriters.

The claim was paid on May 4, 1982. A single check was made out to Scharbarth and Associates. In settlement of the claim, Scharbarth and Associates gave the plaintiffs all rights to the truck.

On May 28, 1982, the indefatigable Mr. Rost contacted Mr. Johnson to say that an informer had linked Scharbarth to the theft. However, the plaintiffs did not attempt to recover their money at that time and never notified Associates about the problem until April 1986.

Two final facts may be important: First, the plaintiffs attempt to pay theft claims within sixty days, but they waited almost ninety days to pay Scharbarth and Associates. Second, neither Scharbarth nor Associates had threatened or initiated legal action against the plaintiffs to receive payment on the claim, although Scharbarth expressed a desire to receive a prompt payment.

The facts that I have related are not disputed. Instead, the plaintiffs and Associates disagree as to what legal theory ought to govern the case. The plaintiffs argue that Associates should make restitution under a theory of unjust enrichment. Associates counters that the plaintiffs are really asserting a claim that payment was made under a mistake of fact, *i.e.* that the plaintiffs assumed the "loss" was bona fide but later learned otherwise. Associates says the law of mistake of fact does not sustain the plaintiffs' claim (because the plaintiffs were conscious of the possibility that the claim may have been fraudulent). In addition, Associates asserts that the plaintiffs' claim is estopped and barred by laches (because Associates abandoned any effort to mitigate its loss in reliance on the plaintiffs' check). These issues are legal questions appropriate for summary judgment.[2]

Rather than deciding which theory is *the* right one, I will analyze this dispute with general principles in mind. At the outset, it is indisputable that neither Associates nor Scharbarth was entitled to payment by the plaintiffs in the first instance. *See* Annot., *Fraud, False Swearing, or other Misconduct of Insured as Affecting Right of Innocent Mortgagee or Loss Payee to Recover on Property Insurance*, 24 A.L. R.3d 435 (1987). Once payment was made, however, Associates may have obtained some rights to the money.

A leading treatise says the following under the heading "Right of Insurer to Recover Payments:"

As a general rule, if the insurer pays a loss, being induced so to do by fraud, or by mistake as to facts which, if it had had knowledge thereof, would have been a sufficient defense in an action by the insured upon the policy, the money so paid may be recovered.

. . . .

An insurer is not entitled to recover a payment made by it under a mistake of law.

. . . .

The insurer is not entitled to recover an improper payment unless it can show that it was not aware of the true facts at the time of paying the loss, and could not have learned of them by reasonable diligence.

18 Couch, Anderson & Rhodes, *Couch on Insurance 2d* (Rev. ed.) §§ 74:191–205 (1983). *See also* 6 J. Appleman & J. Appleman, *Insurance Law and Practice* § 3979 (Mistake) (1972).

As for the theory of restitution,

if an obligation procured by fraud is paid voluntarily with a full knowledge of the facts, the amount so paid cannot be recovered.

. . . .

[W]here one who makes a payment upon a controverted claim or demand is conscious of a want of knowledge of the material facts, or is uncertain, doubtful, or speculative concerning them, particularly where they have been in dispute and their status is specially brought to his attention, such payment is not made under a mistake of fact justifying recovery thereof.

66 *Am.Jur.2d* §§ 116 & 122 (Restitution and Implied Contracts) (1973).

■ Applying these principles to the case at hand, one conclusion is immediately apparent. The plaintiffs are not entitled to get their money back just because they paid the claim to avoid charges of bad

---

**2.** Defendant Scharbarth has not moved for summary judgment, but he has raised certain affirmative defenses in his *pro se* answer to the complaint. Those will be discussed later in this opinion.

faith. That was a mistake of law, and restitution is inappropriate.[3]

■ Mistake of fact is a tougher call. The Couch formulation would seem to favor the plaintiffs, who exercised "reasonable diligence" in attempting to ascertain the true facts, or who should at least be afforded a trial on that question. The *American Jurisprudence* rule, on the other hand, would seem to favor Associates because the plaintiffs knew they were not sure of Scharbarth's veracity. Fortunately, an old Wisconsin case has clarified the approach taken in this state. It is closer to the *American Jurisprudence* rule.

In *Meeme Mutual Home Protective Fire Insurance Co. v. Lorfeld,* the Wisconsin Supreme Court refused to order restitution to an insurance company that paid a loss payee for fire damages even though the insured later confessed to having torched the insured property. 194 Wis. 322, 216 N.W. 507 (1927). The trial court had found that the insurance company *and* the third-party payee "had suspicions on that subject but lacked proof." *Id.* at 323, 216 N.W. 507. The state Supreme Court held:

> [W]here one waives an investigation after his attention has been called to the possibility of the existence of the fact, he is not acting under a mistake of fact in the legal sense. Here the attention of the plaintiff was called to the fact that the fire might be of incendiary origin. It had the benefit of investigation by the state fire marshal as well as such investigation as it had made or could make on its own account; and with full knowledge of all the facts, conscious of the fact that the fire might be of incendiary origin, it nevertheless paid. Under such circumstances, it cannot be said that the plaintiff acted under a mistake of fact in the legal sense.

*Id.* at 324–25, 216 N.W. 507.

In the instant case, the plaintiffs did not waive an investigation. To the contrary, they set three investigators on Scharbarth's trail. Still, the plaintiffs were conscious of the fact that Scharbarth's claim might have been fraudulent, and they nevertheless paid him and an innocent mortgagee. This is what I meant when I called the plaintiffs' payment a business decision. They made a calculated choice that payment of a dubious claim was a better risk than defending against a suit by Scharbarth and/or Associates. *See Grand Trunk Western Railroad Co. v. Lahiff,* 218 Wis. 457, 463, 261 N.W. 11 (1935) (insurance company in *Meeme* "must be taken to have elected to discount the possibilities of an incendiary fire"). Under Wisconsin law, then, the plaintiffs cannot recover from Associates for what turns out to have been their mistake of fact in the factual but not legal sense.

■ I think, too, that the plaintiffs are barred from recouping their money from Associates under restitutionary principles which Associates labels as estoppel. In reliance on the insurance settlement, Associates changed its position to its detriment, and restitution is therefore inappropriate. *Myers v. Fidelity & Casualty Company of New York,* 759 F.2d 1542, 1548 (11th Cir. 1985) (insurer could not recover payment from innocent mortgagee under principles of restitution) (quoting 13 S. Williston & W. Jaeger, *A Treatise on the Law of Contracts* § 1595 (1970)). Although Associates could not have recovered the truck itself— because the truck was quickly chopped into parts by the thieves—Associates gave up any effort to make up its loss in other ways. For example, it might have pursued Scharbarth (before he went to prison) or his coconspirators (when they could have been located) to return what was left of the truck.

■ The equities do not fall the same way when it comes to the plaintiffs' case against Scharbarth. He has been unjustly

---

**3.** The plaintiffs probably would have incurred no extra liability if they had withheld payment pending further investigation or pending the outcome of the FBI inquiry, of which they were aware. This is so because anyone suing the insurers would have had to show the absence of a reasonable basis for their denial of benefits. *Anderson v. Continental Insurance Co.,* 85 Wis. 2d 675, 691, 271 N.W.2d 368 (1978). But these insurers had a reasonable basis for delay, even if they did not have proof of Scharbarth's fraud beyond a reasonable doubt.

enriched. More fundamentally, he willfully defrauded the plaintiffs. The plaintiffs are entitled to summary judgment against him. The only question is, How much may the plaintiffs recover?

In his answer to the complaint, Scharbarth, appearing *pro se*, stated that the plaintiffs failed to mitigate their damages. In addition, he contended that if the plaintiffs were entitled to recover, his own liability would be limited to the amount he personally netted in the fraud—$1,057.49. These are weak arguments, but I will give Scharbarth an opportunity to flesh them out if he so desires. Accordingly, if Scharbarth wants to limit his liability, he will have thirty days from the date of this order to submit reasons why he should not be held responsible for the entire $62,210 plus prejudgment interest at the rate of 5 percent. He should label his response a "Brief on Award of Damages."

If Scharbarth files such a document, the plaintiffs will have the usual fourteen days to respond, and then Scharbarth will have ten days to file a short reply brief if he wants. If Scharbarth does not file such a document, I will enter judgment against him for the entire amount paid by the plaintiffs plus interest and court costs.

In conclusion, the plaintiffs' motion for summary judgment is DENIED as to defendant Associates Commercial Corporation and GRANTED as to defendant Brian Scharbarth. Associates Commercial Corporation's motion for summary judgment is GRANTED and it is dismissed from the case. Scharbarth will have thirty days to move for a limit on the plaintiffs' award, as described above.

SO ORDERED.