Gerald GIELOW and Carol Gielow, Plaintiffs-
Appellants,

v.

Thaddeus F. G. NAPIORKOWSKI and Anna
Napiorkowski, Defendants-Respondents.†

Court of Appeals

*No. 03–0050. Submitted on briefs September 25, 2003.—
Decided November 26, 2003.*

**2003 WI App 249**

(Also reported in 673 N.W.2d 351.)

† Petition to review denied 2-24-04.

675

676

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Christopher T. Hale* of *Hale & Wagner, S.C.* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Eric S. Darling* of *Schmidt, Darling & Erwin* of Milwaukee.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

¶ 1. NETTESHEIM, J. Gerald and Carol Gielow brought this action against Thaddeus and Anna Napiorkowski, alleging that the Napiorkowskis misrepresented the condition of a home that Gerald purchased from them. At summary judgment, the trial court ruled that a "Release of All Claims" given by the Gielows to the Napiorkowskis in settlement of prior litigation between the parties also released the Gielows' claims in this case. The court also rejected the Gielows' alternative claim that the Release should be set aside under the law of mutual mistake and unilateral mistake based on the Napiorkowskis' alleged fraud and misrepresentation.

¶ 2. We reverse and remand. We hold that the language of the Release is ambiguous as to whether the parties intended it to cover any future claims by the Gielows. We remand for a trial on this question. We also hold that there are material issues of fact on the Gielows' alternative claims that the Release should be set aside under the law of mutual mistake and unilateral mistake based on the alleged fraud. Similarly, we hold that a material question of fact exists on the Napiorkowskis' defense under the economic loss doctrine, which contains an exception where fraud induces the contract. We remand for a trial on these further issues should the fact finder determine that the Release covers the Gielows' claims in this case.

### FACTS AND PROCEDURAL HISTORY

¶ 3. In April 1988, the Napiorkowskis listed their home for sale, representing, among other things, that the home was a "ranch style" with a "family room" that had been refurbished within the last three years. The Napiorkowskis completed and provided Gerald with a Seller's Real Estate Condition Report dated April 26,

1988. The Condition Report stated that there had been no remodeling or additions that had changed the original floor plan of the home. As a result, the Gielows did not know that the Napiorkowskis had reconstructed a breezeway situated on a "floating slab" into an attached family room with a vaulted cathedral ceiling. On May 25, 1988, Gerald purchased the home from the Napiorkowskis.

¶ 4. In June 1989, Gerald discovered a problem with the electrical wiring and water lines in the basement of the home. Following an inspection, the village of Thiensville electrical inspector informed the Gielows that the electrical work in the basement had not been performed by a licensed electrical contractor and was performed without an electrical permit.

¶ 5. On May 24, 1991, Gerald filed an action against the Napiorkowskis alleging that the Napiorkowskis had made misrepresentations regarding the condition of the electrical and plumbing systems of the home. The action was eventually settled by the Napiorkowskis paying the Gielows the sum of $8500. In exchange, the Gielows executed a "Release of All Claims." The Release, drafted by the Napiorkowskis, states in relevant part:

> Gerald L. Gielow ... hereby releases and forever discharges [the Napiorkowskis] ... of and from any and all claims, demands, rights, liabilities, allegations, causes of action ... in law or in equity, which Gielow now has or may hereafter have against the Napiorkowskis in any shape arising out of, under, on account of ... or by reason of any matter, cause, thing, action or nonaction whatsoever, which has occurred or accrued prior to or on the date of execution of this Release, and which has any connection whatsoever to the sale of [the property] by the Napiorkowskis to Gielow, and the

claims set forth in the civil action . . . now pending in Milwaukee County Circuit Court . . . .

. . . .

As to the above matters covered hereby, this Release extinguishes all claims past, present, or future, whether known or unknown, foreseen or unforeseen, which are related to or arise out of, the above-described litigation . . . . The parties consciously intend to disregard the possibility that there may be further claims as causes of action or claims now existing which are related to, or arise out of, the above-described litigation to which they are not currently aware, and the parties consciously intend to waive and release all such claims entirely.

¶ 6. Thereafter, in October 1998, the remodeled family room of the Gielows' home separated from the remainder of the house. The village of Thiensville building inspector conducted an on-site inspection and informed the Gielows that the family room was built on a floating slab that had begun to settle and pull away from the house. As a result, the family room was in "structural failure." The inspector further advised that the family room had been constructed in violation of the building codes and without the necessary permits. The inspector opined that the Gielows could not have discovered the violation until the separation occurred. The cost to repair the separation was estimated at $80,000.

¶ 7. Based on these allegations, the Gielows commenced this action seeking relief from the Release on the grounds of mutual mistake and unilateral mistake based on fraud. Separate and apart from these mistake claims, the Gielows alleged claims of intentional misrepresentation and strict responsibility misrepresentation.

¶ 8. In response to the Gielows' amended complaint, the Napiorkowskis filed a motion to dismiss, relying on the Release executed by the Gielows in the previous action. During the course of the briefing and ensuing arguments, the parties supplied the trial court with evidentiary material beyond the allegations of the amended complaint. The trial court therefore treated the motion as one for summary judgment.

¶ 9. Originally, the trial court determined that the Release was unambiguous and covered the Gielows' claims in this case. Thus, the court turned to the Gielows' alternative claim seeking relief from the Release on the basis of mistake. Citing the Real Estate Condition Report provided by the Napiorkowskis and the disparity between the consideration paid for the Release in the prior case and the damages alleged in this case, the court held that there were material issues of fact as to the Gielows' mistake claims. Accordingly, the court denied the summary judgment motion.

¶ 10. However, the matter did not proceed to trial. Instead, following discovery, the Napiorkowskis filed a further motion for summary judgment, renewing their claim that the evidence did not establish any material issues of fact in support of the Gielows' claims for relief under the law of mistake. In addition, the Napiorkowskis claimed that the Gielows' tort claims arose out of a contractual relationship and were therefore barred by the economic loss doctrine. Reversing its earlier ruling, the trial court held that the summary judgment record did not reveal any material issue of fact in support of the Gielows' claim of mutual mistake. Based on that ruling and on the court's earlier ruling that the Release barred all future claims by the

Gielows, the court granted the Napiorkowskis' motion for summary judgment dismissing the Gielows' action with prejudice.[1]

¶ 11. The Gielows appeal.

## DISCUSSION

### Standard of Review and Summary Judgment Methodology

██

¶ 12. This court reviews a grant of summary judgment de novo, applying the same methodology as the circuit court. *Miller ex rel. Fehring v. Wausau Underwriters Ins. Co.*, 2003 WI App 58, ¶ 10, 260 Wis. 2d 581, 659 N.W.2d 494. Summary judgment methodology is well known, and we will not repeat it here in detail. Suffice it to say that summary judgment is appropriate if there is no genuine issue about any material fact and the moving party is entitled to judgment as a matter of law. *Id.*; WIS. STAT. § 802.08(2) (2001–02).[2] We further observe that when the parties present matters outside the pleadings on a motion to dismiss, the motion shall be processed as one for summary judgment. *See* WIS. STAT. § 802.06(3).

### The Release

¶ 13. We first address whether the Release executed by the Gielows to the Napiorkowskis in settle-

[1] Since the Gielows would first have to obtain relief from the Release, the trial court's ruling mooted the Gielows' further claims of intentional misrepresentation and strict responsibility misrepresentation.

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

ment of the prior action is global, thereby barring the Gielows' claims in this case.

¶ 14. A release is to be treated as a contract. *Peiffer v. Allstate Ins. Co.*, 51 Wis. 2d 329, 336, 187 N.W.2d 182 (1971). Releases should be construed to give effect to the intention of the parties. *Brown v. Hammermill Paper Co.*, 88 Wis. 2d 224, 233–34, 276 N.W.2d 709 (1979). However, the parties' intent "must be sought from the whole and every part of the instrument and from the surrounding conditions and circumstances." *Id.* at 234. Intent is a fact seldom determinable on summary judgment. *Muchow v. Goding*, 198 Wis. 2d 609, 629, 544 N.W.2d 218 (Ct. App. 1995). When a party's intent as to the scope of a release is the issue, "summary judgment is generally inappropriate." *See id.* (citation omitted). A fundamental rule of contract construction, which serves as a primary guideline in a court's consideration of a contract's ambiguity, is that any ambiguity must be construed most strongly against the drafting party. *Capital Invs., Inc. v. Whitehall Packing Co. Inc.*, 91 Wis. 2d 178, 190, 280 N.W.2d 254 (1979).

¶ 15. Here, the trial court found that the Release was unambiguous and that the parties intended that it apply to the damages alleged in this action. Undoubtedly, certain isolated language in the Release supports the trial court's interpretation. For instance, the Release refers to possible future claims and states, "[T]he parties consciously intend to waive and release all such claims entirely." However, that phrase is preceded by the following language in the very same sentence: "The parties consciously intend to disregard the possibility that there may be further claims as causes of action or claims now existing *which are related to, or arise out of,*

*the above-described litigation* to which they are not currently aware . . . ." (Emphasis added.) This qualifying language suggests that the Release is not global, but rather is limited to possible future claims relating to the electrical and plumbing issues, which were the subject of the litigation that produced the Release.

¶ 16. Another portion of the Release creates a similar interpretative dilemma:

> Gerald L. Gielow . . . hereby releases and forever discharges [the Napiorkowskis] . . . of and from any and all claims . . . which Gielow now has or may hereafter have against the Napiorkowskis in any shape arising out of, under, on account of, with respect to, in connection with, or by reason of any matter, cause, thing, action or nonaction whatsoever, which has occurred or accrued prior to or on the date of execution of this Release, and which has any connection whatsoever to the sale of [the property] by the Napiorkowskis to Gielow . . . .[3]

This language certainly has a global ring. However, it concludes with the following: *"and the claims set forth in the civil action in which Gielow is the plaintiff and the Napiorkowskis are defendants, now pending in Milwaukee County Circuit Court, Case No. 91–CV-007371."* (Emphasis added.) As with the earlier example, this additional language in the very same sentence appears to qualify the otherwise sweeping effect of the preceding language.[4]

---

[3] Although this language refers only to Gerald Gielow, the release was also signed by his wife, Carol, who was a co-plaintiff in the amended complaint. The Gielows do not argue that Carol is not bound by the terms and scope of the Release.

[4] A further provision of the Release clearly supports the Gielows' claim that the Release was limited to the claims

¶ 17. The law favors interpretations that give a reasonable meaning to all of the language of a release. *See Fleming v. Threshermen's Mut. Ins. Co.*, 131 Wis. 2d 123, 132, 388 N.W.2d 908 (1986). Giving a reasonable meaning to all of the language of the Release, we conclude that the Release is ambiguous on the question of whether the parties intended a global release or a release limited to the Gielows' claims in the prior litigation. In addition, we take note that the Napiorkowskis drafted the Release. As such, the ambiguities in the document are construed against them. *See Capital Invs.*, 91 Wis. 2d at 190.

¶ 18. The law also recognizes that the consideration given for a release is a proper factor for consideration when determining the scope of a release. *See Pokorny v. Stastny*, 51 Wis. 2d 14, 23–24, 186 N.W.2d 284 (1971). Here, the disparity between the consideration paid for the Release ($8500) and the amount of damages claimed ($80,000) is significant.[5] This disparity contributes to our conclusion that a material issue of fact exists as to the parties' intent regarding the scope of the release.

¶ 19. We reverse the trial court's grant of summary judgment on this issue and remand for a trial on the question of the parties' intent regarding the scope of the release.

---

asserted in the prior action. This provision reads: "As to the above matters covered hereby, this Release extinguishes all claims past, present, or future, whether known or unknown, foreseen or unforeseen, *which are related to or arise out of, the above-described litigation.*" (Emphasis added.)

[5] Other evidence placed the damages in the $100,000 range.

### Mutual Mistake and Unilateral Mistake

¶ 20. Our remand for a trial on the scope of the Release allows for the possibility that the fact finder might determine that the parties intended the Release to cover the Gielows' claims in this case. In that event, the Gielows' alternative claims seeking relief from the Release on the grounds of mutual mistake and unilateral mistake based on fraud come into play. We now address that question.

¶ 21. As noted, the Napiorkowskis moved to dismiss the Gielows' claim for relief from the Release under the law of mistake. Treating the motion as one for summary judgment, the trial court denied the motion. However, following discovery, the Napiorkowskis renewed their request for dismissal via a further motion for summary judgment. Based on the expanded record, the trial court changed its prior ruling and granted the motion. The Gielows appeal, contending that material issues of fact exist on the question of what the Napiorkowskis knew, or should reasonably be held to have known, regarding the alleged latent defect.

¶ 22. A "compromise" or contract settling a suit may be set aside for mutual mistake of fact. *See Grand Trunk W.R.R. Co. v. Lahiff*, 218 Wis. 457, 461, 261 N.W. 11 (1935).[6] Mutual mistake exists where both parties to

---

[6] Most of the case law pertaining to "mutual mistake" addresses global releases given in reliance upon incorrect medical representations or diagnoses. *See, e.g., Liles v. Employers Mut. Ins. of Wausau*, 126 Wis. 2d 492, 496, 377 N.W.2d 214 (Ct. App. 1985); *Krezinski v. Hay*, 77 Wis. 2d 569, 574, 253 N.W.2d 522 (1977). The parties' briefs debate whether these medical diagnosis cases lend themselves to property defect cases such as this. However, we need not venture into that debate since an

a contract are unaware of the existence of a past or present fact material to their agreement. WIS JI—CIVIL 3072.[7] This unawareness or belief, however, must arise from a lack of knowledge of the possibility that the fact may or may not exist. *Id*. If there was conscious doubt or uncertainty on the part of the parties as to the existence or nonexistence of a fact or situation, and the parties reached an agreement under such circumstances, it is considered that it was their intention and contemplation to accept and compromise the consequences of the doubt and uncertainty, and they would not then be acting under mutual mistake of fact. *Id*. For a mistake to be mutual, it must involve both parties. *Id*.

---

earlier case, *Meeme Mutual Home Protection Fire Insurance Co. v. Lorfeld*, 194 Wis. 322, 216 N.W. 507 (1927), applied the law of mutual mistake in a factual setting not involving a medical diagnosis. In *Meeme*, an insurance company paid a claim for a fire loss despite harboring a suspicion that the fire was arson. *Id*. at 322–23. Seeking to recover the payment after the suspected arsonist confessed, the supreme court applied the law of mutual mistake, concluding that the insurance company had not made the payment under a mistake of fact. *Id*. at 324–25. Moreover, the standard jury instruction, "Avoidance for Mutual Mistake of Fact," WIS JI—CIVIL 3072, contains a separate suggested paragraph for medical representation indicating that the preceding paragraphs apply to nonmedical situations.

[7] The work of the Civil Jury Instructions Committee is insightful and can be persuasive. *Pachowitz v. LeDoux*, 2003 WI App 120, ¶ 21 n.7, 265 Wis. 2d 631, 666 N.W.2d 88, *review denied*, 2003 WI 140, 266 Wis. 2d 63, 671 N.W.2d 849 (Wis. Oct. 21, 2003) (No. 02–2100).

¶ 23. However, mutuality of mistake is not required where the mistake is the product of fraud practiced by one party to the agreement against the other. In the words of the uniform jury instruction, "A mere mistake on the part of one, *in the absence of fraud on the part of the other,* is not such to avoid a contract obligation." *Id.* (emphasis added). *See also Doyle v. Teasdale,* 263 Wis. 328, 337, 57 N.W.2d 381 (1953). In this case, the Gielows sought relief from the Release based not only on mutual mistake, but also on unilateral mistake due to the Napiorkowskis' alleged fraud. We address both claims in a singular discussion since the evidence bearing on these claims is the same.

¶ 24. The trial court determined that there was no mutual mistake regarding the existence of a family room because the home did in fact have a family room.[8] However, it is not the Gielows' knowledge that there was a family room as opposed to a breezeway that caused their damage. Rather, their claim rests on the allegation that the Napiorkowskis knew or should have known that the family room was improperly built on a floating slab without the necessary permits and in violation of building codes. As such, the Gielows con-

---

[8] At the summary judgment hearing, the parties agreed with the trial court that the Gielows' claim of mutual mistake governed the motion. Therefore, the court's ruling did not expressly address the Gielows' subset claim of unilateral mistake based on fraud. This raises the prospect of waiver by the Gielows on their claim of unilateral mistake. However, since we hold that a material issue of fact exists on the Gielows' claim of mutual mistake (a claim not waived), we choose to address their additional claim of unilateral mistake.

tend that the Napiorkowskis knew, or should reasonably be held to have known, the potential for future damage.[9]

¶ 25. The Napiorkowskis rely on their averments that they did not know what a "floating slab" was and that they were unaware that their remodeling violated the building codes or required permits. However, other evidence suggests that the conduct of the Napiorkowskis was not as benign. The Napiorkowskis provided the Gielows with a Real Estate Condition Report which inquired whether the Napiorkowskis constructed any remodeling or additions that may have changed the original floor plan of the dwelling. The Napiorkowskis answered "No." This response conveniently excused the Napiorkowskis from having to answer a subset question inquiring whether a building permit had been obtained authorizing the remodeling. However, the summary judgment evidence reveals that a building permit was required. And the affidavit of the Gielows' inspector, relying on the records of the village tax assessor, concluded that the remodeling did change the floor plan.

¶ 26. The Napiorkowskis also point to the fact that the parties did not discuss or investigate the question of whether there were potential problems with other aspects of the home prior to entering into the Release. However, this might well detract from, rather than support, their argument. We say this because it suggests an issue of fact on the questions of: (1) whether the parties had "conscious doubt or uncer-

[9] The Napiorkowskis do not contend that the Gielows knew, or had reason to know, that the family room was constructed on a "floating slab" in violation of the building codes and without the necessary permits. Thus, the focus of the inquiry is on the Napiorkowskis' knowledge and conduct.

tainty . . . as to the existence or non-existence of [the defect], and . . . reached an agreement under such circumstances . . ." and (2) whether "it was [the parties'] intention and contemplation to accept and compromise the consequences of the doubt and uncertainty . . . ." *See* Wis JI—Civil 3072.

¶ 27. Finally, as with the prior issue concerning the scope of the release, the adequacy of the consideration paid for a release is also relevant on the question of mutual mistake or fraud. *Jandrt v. Milwaukee Auto Ins. Co.*, 255 Wis. 618, 626, 39 N.W.2d 698 (1949). In fact, a court may place considerable significance on the adequacy of the consideration. *Id.* "Although inadequate consideration will not in itself justify setting aside a release, it is a factor properly considered and is strong evidence tending to show a mutual mistake of fact." *Liles v. Employers Mut. Ins. of Wausau*, 126 Wis. 2d 492, 498, 377 N.W.2d 214 (Ct. App. 1985). Here, if the fact finder determines that the Release was global, the Gielows received $8500 in exchange for all past and future claims, including the present claim, which alleges damages at $80,000 in the amended complaint and $100,000 according to subsequent evidence. This disparity supports our conclusion that a material issue of fact exists on the Gielows' claim of mutual mistake and the subset claim of unilateral mistake based on fraud. Moreover, evidence of such disparity would be relevant to a trial of these claims, should such a trial prove necessary.

¶ 28. We hold that the summary judgment evidence raises material questions of fact on the Gielows' claim of mutual mistake and unilateral mistake based on fraud. More specifically, the summary judgment evidence raises the legitimate question of whether the

parties, in the words of the jury instruction, "[were] unaware of the existence of a past or present fact material to their agreement" or "[were] conscious or aware of, or alerted to, the possibility that a fact does or does not exist, and they waive any inquiry or make no investigation with respect to [such fact] . . . ." *See* WIS JI—CIVIL 3072. We similarly hold that the summary judgment evidence raises a material question of fact on the Gielows' related claim of unilateral mistake based on alleged fraud. "A mere mistake on the part of one, *in the absence of fraud on the part of the other,* is not such to avoid a contract obligation." *Id.* (emphasis added).

### *Economic Loss Doctrine*

¶ 29. In their summary judgment motion, the Napiorkowskis also sought dismissal of the Gielows' claims under the economic loss doctrine. The trial court did not reach this question because its prior rulings rendered the issue moot. We choose to address the issue because the parties have fully briefed the matter and the question comes to us via a motion for summary judgment which presents a question of law. *See Miller,* 260 Wis. 2d 581, ¶ 10. Our discussion will also clarify how this issue should be addressed in the trial court, should the fact finder determine that the Gielows' claims are barred by the Release.

¶ 30. The economic loss doctrine exists to preserve the distinction between tort and contract law. It exists to protect the expectations of parties to commercial transactions to allow such parties the freedom to allocate any incidental risks. "In other words, the economic loss doctrine requires transacting parties in Wisconsin to pursue only their contractual remedies

691

when asserting an economic loss claim, in order to preserve the distinction between contract and tort law." *Digicorp, Inc. v. Ameritech Corp.*, 2003 WI 54, ¶ 34, 262 Wis. 2d 32, 662 N.W.2d 652.

¶ 31. However, in *Digicorp*, our supreme court recognized a narrow "fraud in the inducement" exception to the economic loss doctrine. *Id.*, ¶ 3. Generally, in order for the fraud in the inducement exception to apply, the misrepresentation must have occurred before the formation of the contract. *Id.*, ¶ 52. In addition, a plaintiff must prove the five elements of intentional deceit or misrepresentation set forth in the case law and in Wis JI—Civil 2401 by clear, satisfactory, and convincing evidence. *Digicorp*, 262 Wis. 2d 32, ¶ 52. In essence, the fraud in the inducement must be interwoven with the contract in that it involves matters for which risks and responsibilities were addressed. *Id.*, ¶ 3. The *Digicorp* court noted that its adoption of this exception did not undo the purposes of the economic loss doctrine since the exception was a narrow one that maintains the distinction between contract and tort remedies in most situations. *Id.*, ¶ 52.

¶ 32. We have already held that there are material issues of fact on the Gielows' claim for relief from the Release under the law of unilateral mistake based on fraud. From that, it logically follows that there are similar issues of fact regarding the fraud exception to the economic loss doctrine under *Digicorp*. In addition, there is a material question of fact as to whether any misrepresentation occurred before the parties entered

into the contract.[10] In short, the vitality of the Napi-orkowskis' economic loss defense cannot be determined until these factual questions are resolved.

## CONCLUSION

¶ 33. We hold that the language of the Release is ambiguous as to its scope and therefore there are material questions of fact regarding the parties' intent regarding the scope of the Release. We remand for a trial on that question.

¶ 34. We also hold that there are material questions of fact regarding the Gielows' claims seeking relief from the Release on the grounds of mutual mistake and unilateral mistake based on alleged fraud. In the event the fact finder determines that the Release covers the Gielows' misrepresentation claims, we direct a trial on these additional claims.

¶ 35. Finally, we hold that there are also material questions of fact regarding the "fraud in the inducement" exception to the economic loss doctrine. Again, should the fact finder determine that the Release covers the Gielows' misrepresentation claims, we direct a trial on this question.

*By the Court.*—Judgment reversed and cause re-manded.

---

[10] The Napiorkowskis cite to the fact that the Real Estate Condition Report bears a date after the date of the contract of sale. The Gielows cite to the fact that the contract includes the Condition Report and that the contract was later amended.