**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Argued January 15, 2009
Decided March 25, 2009

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

TERRENCE T. EVANS, *Circuit Judge*

No. 07-2732

| | |
|---|---|
| BHP ENGINEERS UK LTD., and BHP ENGINEERS, LTD., | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *Plaintiffs-Appellants*, | |
| v. | |
| | No. 06 C 0926 |
| REXNORD INDUSTRIES, INC., | |
| *Defendant-Appellee*. | William E. Callahan, Jr., *Magistrate Judge*. |

**O R D E R**

Plaintiffs BHP Engineers UK, Ltd. and BHP Engineers, Ltd. (collectively, "BHP") sought a declaratory judgment that defendant Rexnord Industries, Inc. ("Rexnord") owed it "after-market exclusivity" under a settlement agreement involving the supply and sale of industrial elevator chains. Rexnord counter-claimed, arguing that the guarantee of after-market exclusivity had expired. The district court granted summary judgment to Rexnord. BHP appeals and we affirm.

I.

BHP Engineers UK, Ltd., and BHP Engineers, Ltd., supply parts for cement manufacturers in India and southern Asia. BHP Engineers UK is incorporated in the United Kingdom; BHP Engineers is incorporated in India. Rexnord, a company incorporated in Delaware and having its principal place of business in Wisconsin, supplies elevator chains to BHP for sale in India. Rexnord had sold elevator chains to BHP since 1985, and in turn BHP installed the chains in elevators for cement plants in India.

Rexnord and BHP formalized their relationship on May 9, 2001, by signing the Value Added Distributor Agreement ("VAD"). The VAD stated that it represented the "entire understanding" between the parties and subsumed all previous agreements. After setting forth the parties' rights and responsibilities, the VAD established a date for expiration. According to paragraph 17.1, the VAD would expire five years from the signing date: May 9, 2006. Under the heading "Effect of Termination or Expiration," the VAD further specified in paragraph 18 that "[t]hose provisions, which by their nature are meant to survive termination or expiration of [the VAD], shall survive such termination or expiration."

Back in 1995 Rexnord and BHP had a dispute about the quality of chains supplied by Rexnord after BHP claimed that the chains were breaking. Eventually, on August 20, 2003, Rexnord and BHP settled this dispute by signing the Confidential Settlement Agreement ("CSA"). The CSA stated its intent to "settle all disputes" between Rexnord and BHP and to "reaffirm the validity and supremacy of . . . the VAD, as well as set forth certain additional provisions related to the VAD." In paragraph 1 of the CSA, Rexnord and BHP agreed to a "mutual release of all claims" related to the elevator chain dispute. BHP also agreed to "hold Rexnord harmless for any end-user claims" relating to the warranties on the chains shipped before January 2002.

Paragraph 2 of the CSA contains the language at issue here. Paragraph 2 states:

Reaffirmation of VAD

Both parties reaffirm the validity and supremacy of the terms and conditions contained in the VAD and specifically acknowledge and agree that the terms of the VAD govern all prior and future transactions between the parties including, but not limited to, the representations, warranties, limitations of liability and remedies set forth therein. Rexnord agrees to hold its current prices firm on the chain supplied to BHP until July 1, 2005. *Rexnord also agrees to provide BHP with after-market exclusivity on existing and future BHP installations within the VAD territory.* In addition, Rexnord agrees to modify the warranty terms in the VAD from 18 months after shipment to

> 24 months after shipment or 18 months after commissioning, whichever is earlier. . . .
> The VAD will be amended to incorporate these changes and a current price list will
> be attached to the agreement.

(Emphasis added.)  Pertinent to this case is Rexnord's guarantee of "after-market exclusivity" to BHP, which provided BHP with exclusive service and dealings with BHP's customers in the VAD territory: India, Bangladesh, Sri Lanka, Myanmar, and Nepal. Under this exclusivity clause, Rexnord could not supply replacement parts for installed elevator chains in those countries without using BHP as a distributor.

The VAD agreement expired on May 9, 2003, and Rexnord and BHP did not renew the agreement. After its expiration, Rexnord informed BHP that it would no longer honor the exclusivity clause in the CSA.  According to Rexnord, the clause expired when the VAD agreement expired. BHP disagreed, insisting that the exclusivity clause continued independently from the VAD.  BHP filed this complaint, seeking a declaratory judgment to that effect. Rexnord filed a counter-claim for a declaratory judgment favoring its interpretation of the CSA. The parties filed cross-motions for summary judgment.  The magistrate judge ruled in favor of Rexnord, concluding that the parties intended that the exclusivity clause in the CSA be governed by the duration clause of the VAD.  The magistrate judge held that when the VAD expired, the exclusivity clause in the CSA also expired. BHP appeals.

II.

The district court had jurisdiction over this diversity case under 28 U.S.C. § 1332(a)(2).  The district court applied the law of the forum state, Wisconsin, in accordance with the terms of the VAD.  Because the parties do not contest the application of Wisconsin law, we will apply that law as well. *Employers Mut. Cas. Co. v. Skoutaris*, 453 F.3d 915, 923 (7th Cir. 2006).

Clearly, the VAD was a contract.  The CSA was a settlement agreement and hence also subject to principles of contract interpretation. *See Fleming v. Threshermen's Mut. Ins. Co.*, 388 N.W.2d 908, 911 (Wis. 1986); *see also Gielow v. Napiorkowski*, 673 N.W.2d 351, 355 (Wis. Ct. App. 2003).  "Contracts are interpreted to give effect to the parties' intent, as expressed in the contractual language." *Seitzinger v. Cmty. Health Network*, 676 N.W.2d 426, 433 (Wis. 2004).  "Such language is to be interpreted consistent with what a reasonable person would understand the words to mean under the circumstances." *Id*.  Extrinsic evidence may be introduced if the contract is ambiguous. *Id*.  A court should find a contract

ambiguous only if "it is susceptible to more than one reasonable interpretation." *Danbeck v. Am. Family Mut. Ins. Co.*, 629 N.W.2d 150, 154 (Wis. 2001).

Rexnord argues that the exclusivity clause in the CSA constituted a modification of the VAD and hence was subject to the duration clause of the VAD. "Whether a contract has been modified is a question of fact subject to the clearly erroneous standard of review." *Carnes Co. v. Stone Creek Mech., Inc.*, 412 F.3d 845, 852 (7th Cir. 2005) (applying Wisconsin law). The modification of a contract must be unequivocal; ambiguous acts are insufficient. *Id*. at 853. "While the effect of a modification may be the creation of a new contract, that contract consists of not only the new terms agreed upon but those terms of the original contract which were not modified." *Id*. (citing *Estreen v. Bluhm*, 255 N.W.2d 473, 479 (Wis. 1977)).

Here, the CSA indicated in its preamble that it would "set forth certain additional provisions related to the VAD." Paragraph 2 of the CSA referred to the VAD in its title, "Reaffirmation of VAD." Moreover, the end of paragraph 2 stated that "[t]he VAD will be *amended* to incorporate these changes." (Emphasis added.) Among the changes specified in paragraph 2 was the guarantee of "after-market exclusivity." By placing that guarantee within the larger context of the "reaffirmation" of the VAD and the stated intention of "amending" the VAD to reflect the changes specified in paragraph 2, the parties made clear their intention to modify the VAD to incorporate those changes. The district court did not clearly err in concluding that the exclusivity clause of the CSA modified the VAD. *See, e.g.*, *Carnes*, 412 F.3d at 853 (concluding that a later agreement altering terms was a modification). Because the exclusivity clause in the CSA was a modification of the VAD and did not specify when it would expire, the exclusivity clause was subject to the expiration clause in the VAD. Hence, when the VAD expired, the exclusivity clause in the CSA expired.

In response, BHP argues that the exclusivity clause bore its own durational element and by its terms was intended to outlast the VAD. According to BHP, the critical language in the clause is that after-market exclusivity is guaranteed on "existing and future BHP installations." As interpreted by BHP, after-market exclusivity depends on whether BHP maintains any customers in the VAD territory. Thus, according to this interpretation, only if BHP loses its customers is Rexnord no longer obligated to provide after-market exclusivity.

There are two problems with BHP's argument. First, the exclusivity clause contains no language that refers to time or duration. That is, the clause nowhere refers to it lasting

"as long as" or "until" certain preconditions are met. The lack of any words of duration casts doubt on BHP's preferred interpretation. Second, BHP's argument ignores the surrounding context. The rest of paragraph 2 makes clear that the provisions in that section are subservient to the terms of the VAD, except where the conditions in the CSA expressly conflict with the VAD. There is no apparent conflict between the exclusivity clause in the CSA and the expiration clause in the VAD. Accordingly, we find no error in the district court's conclusion that the exclusivity clause expired when the VAD expired. We conclude that such an interpretation is the only reasonable one. For these reasons, Rexnord was no longer bound by the guarantee of after-market exclusivity in the CSA once the VAD expired in May 2006 and the district court properly granted summary judgment to Rexnord.[1]

III.

The language and context of the exclusivity clause in the CSA demonstrate that the expiration clause in the VAD governed the exclusivity clause. Accordingly, the exclusivity clause expired when the VAD expired in May 2006. The district court properly granted summary judgment for Rexnord. We AFFIRM.

---

[1]BHP also argues that, even if we do not interpret the exclusivity clause as it does, we should conclude that the CSA is ambiguous and examine extrinsic evidence proffered by BHP. Because we hold that the only reasonable interpretation of the two agreements is that the expiration clause in the VAD governed the exclusivity clause in the CSA, no ambiguity arises and there is no need to resort to extrinsic evidence. *Danbeck*, 629 N.W.2d at 154.