NIKSA IVANCEVIC and Kelly D. Ivancevic,
Plaintiffs-Appellants-Cross-Respondents,

v.

Ronald C. REAGAN and Debra L. Reagan,
Defendants-Third-Party Plaintiffs-Respondents-
Cross-Appellants,

v.

LEMEL HOMES, INC. and Cincinnatti Ins. Co.,
Third-PartyDefendants-Fourth-Party Plaintiffs,

v.

KOLL CONTRACTING, LLC, American Family Mutual
Ins. Co., City Wide Insulation of Madison, Inc.,
Zurich American Ins. Co., Phase One Carpenter
Contractors, Inc. and Rural Mutual Ins. Co.,
Fourth-Party Defendants.

Court of Appeals

*No. 2012AP2294. Submitted on briefs August 6, 2013.
—Decided September 17, 2013.*

2013 WI App 121

(Also reported in 839 N.W.2d 416.)

On behalf of the plaintiffs-appellants-cross respondents, the cause was submitted on the briefs of *Richard H. Schulz* of *Schulz Legal Services LLC*, Milwaukee.

On behalf of the defendants-third-party plaintiffs-respondents-cross-appellants the cause was submitted on the briefs of *Mark P. Murphy*, Milwaukee.

Before Fine, Kessler and Brennan, JJ.

¶ 1. BRENNAN, J. Niksa and Kelly Ivancevic appeal from a circuit court judgment entered after the court granted Ronald and Debra Reagan's motion for summary judgment, dismissing the Ivancevics' mutual-mistake claim. We affirm the circuit court's decision, concluding that the doctrine of mutual mistake was unavailable to the Ivancevics because, even if the Ivancevics are correct in their assertion that both parties were unaware that the ventilation system in the home was defective, that fact was not material to their sales contract because the sales contract did not represent that the home was defect free.

¶ 2. The Reagans cross-appeal from the circuit court's judgment, arguing that the court erred when it denied their motion for sanctions against the Ivancevics. We affirm because the circuit court did not erroneously exercise its discretion when it determined that the Ivancevics' claims were not frivolous.

## BACKGROUND[1]

¶ 3. The Reagans hired Lemel Homes, Inc. to design and build a home that the Reagans intended to

---

[1] The facts set forth in the background section are those agreed upon by the parties during summary judgment. To the

sell ("the Residence"). The Reagans were not personally involved in the construction plans or the actual construction of the Residence. After the Residence was built, the Reagans hired a home-staging company, who placed a family in the Residence. That family lived in and maintained the Residence from approximately August 2008 through March 2009. The family never reported any significant problems and reported no issues regarding moisture in the attic.

¶ 4. On March 11, 2009, the Ivancevics entered into a residential lease with the Reagans ("the Lease"), which included an Option to Purchase the Residence ("the Option to Purchase").[2] In the Lease, the Reagans represented and warranted that the Residence would be "delivered in clean condition and good repair, free of mold and toxic substances, suitable for habitation in compliance with all laws." Beyond that, the Ivancevics accepted the Residence "in its 'AS-IS' physical condition during the term of the Lease."

¶ 5. On May 6, 2009, while considering whether to exercise the Option to Purchase, the Ivancevics commissioned a home inspection. The home inspection report referenced its inspection of the roof's ventilation system, which consisted of a continuous ridge vent, eight gable vents, and seventeen soffit vents. It did not

extent a particular fact is disputed, we view the fact in the light most favorable to the Ivancevics, but note the Reagans' disagreement. *See Tatera v. FMC Corp.*, 2010 WI 90, ¶ 52, 328 Wis. 2d 320, 786 N.W.2d 810 (stating that the standard summary judgment methodology requires that the court view the evidence in the light most favorable to the non-moving party).

[2] Neither the Lease nor the Option to Purchase included in the record and referenced by the parties in their respective briefs is signed. However, the parties appear to agree that the documents in the record are accurate representations of the documents they executed. Therefore, we accept them as such.

reference any problems with the ventilation system. The roof inside the attic was also inspected for active roof leaks and none were found.

¶ 6. The Ivancevics also commissioned a series of mold inspections and testings prior to closing, including hiring Indoor Air Quality Diagnostics, Inc., who "performed a mold and moisture assessment" for the Residence. The assessment included "identifying building materials that contained elevated levels of moisture." The results were unremarkable.

¶ 7. The Ivancevics exercised the Option to Purchase, and closed on the Residence on July 23, 2009. In the Option to Purchase, the Reagans represented "that as of the date Seller grants this Option[,] Seller has no notice or knowledge of conditions affecting the Property or transaction . . . other than those identified in Seller's property condition report." The property condition report is not in the record.[3]

¶ 8. In January 2010, the Ivancevics noticed water leaking through a door trim and a window casing on the second floor of the Residence. They immediately contacted the Reagans and Lemel Homes. Both parties disclaimed any liability.

¶ 9. The Ivancevics hired Stuart Rothman, a licensed architect, to inspect the Residence. Rothman opined that the cause for the moisture and condensation issue related to incorrect design and construction of the attic ventilation system. He believed the total ventilation area was inadequate and violated building

---

[3] The Reagans assert that the seller's property condition report is not in the record. Our review of the record confirms that representation, and the Ivancevics have not refuted that representation. Unrefuted claims are deemed admitted. *Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

codes.[4] The Ivancevics were familiar with Rothman as they had hired him previously when suing a builder for defects caused by water infiltration in their prior residence.

¶ 10. The Ivancevics commenced this action against the Reagans, claiming mutual mistake and breach of contract.[5] With respect to their mutual-mistake claim, the Ivancevics alleged that the Residence's roof and attic ventilation systems were defective; that neither they nor the Reagans were aware of the defects at the time of purchase; and that had the Ivancevics known of the defects they would not have purchased the Residence. With respect to the breach-of-contract claim, the Ivancevics claimed that the Reagans represented to them that the Residence was free of defects; that the Residence did contain defects, particularly the faulty roof and ventilation systems; and that the Reagans' misrepresentations amounted to a breach of the parties' contract. The Ivancevics sought damages as to be determined by the court or rescission of the sales contract.

¶ 11. The Reagans filed a motion for summary judgment, alleging that the doctrine of mutual mistake was not available to the Ivancevics because the Ivancevics had knowledge of the possibility of moisture and roof defects when they exercised the Option to

---

[4] The Reagans disagree with Rothman's conclusion that the ventilation system was inadequate and not up to code. In opposition, they cite a report from Five Star Energy Corporation, who Lemel Homes hired to inspect the Residence in April 2010. For the purposes of this appeal, we accept Rothman's assertion—that the ventilation system was not up to code—as true. *See Tatera*, 328 Wis. 2d 320, ¶ 52.

[5] There are also additional parties named in this case whose interests are not relevant on appeal.

Purchase. The Reagans also argued that the Ivancevics' breach-of-contract claim should be dismissed because the Reagans never represented to the Ivancevics that the Residence was defect free. In the motion, the Reagans also requested sanctions against the Ivancevics, arguing that the Ivancevics' claims were frivolous. The circuit court granted the motion for summary judgment, dismissing the Ivancevics' claims against the Reagans, but denied the motion for sanctions.

¶ 12. The Ivancevics appeal, complaining that the circuit court erred in denying their mutual-mistake claim.[6] The Reagans cross-appeal, arguing that the circuit court erred when it denied their motion for sanctions. The Reagans have also filed a motion with this court, complaining, on similar grounds, that we should find the Ivancevics' appeal frivolous and award the Reagans costs and reasonable attorney's fees. We address each issue in turn.

## DISCUSSION

### A. The Ivancevics' Appeal: The Ivancevics have not set forth a valid mutual-mistake claim.

¶ 13. The Ivancevics contend that the circuit court erred when it dismissed their mutual-mistake claim on summary judgment. They argue that the evidence demonstrates that the parties bargained for a defect-free house that complied with all relevant laws and that the circuit court was wrong when it ruled that the doctrine of mutual mistake was unavailable to the

---

[6] The Ivancevics do not appeal the circuit court's decision dismissing their contract claim.

Ivancevics because the Ivancevics knew of the *possibility* of moisture problems in the house but chose to purchase the Residence anyway. We affirm the circuit court, although with slightly different reasoning. *See State v. Earl*, 2009 WI App 99, ¶ 18 n.8, 320 Wis. 2d 639, 770 N.W.2d 755.

¶ 14. We review a grant of summary judgment by applying the standards set forth in WIS. STAT. § 802.08(2) (2011–12),[7] just as the circuit court applied those same standards. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Where, as here, the material facts are not in dispute, the only question on review is whether the moving party is entitled to judgment as a matter of law. *See Teschendorf v. State Farm Ins. Cos.*, 2006 WI 89, ¶ 9, 293 Wis. 2d 123, 717 N.W.2d 258.

¶ 15. "The general rule is that a contract may be reformed when the 'writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing.' " *Vandenberg v. Continental Ins. Co.*, 2001 WI 85, ¶ 50, 244 Wis. 2d 802, 628 N.W.2d 876 (citation omitted); *see also Gielow v. Napiorkowski*, 2003 WI App 249, ¶ 22 n.6, 268 Wis. 2d 673, 673 N.W.2d 351 (applying mutual-mistake doctrine to a release). *Gielow* succinctly describes the doctrine of mutual mistake and its relevant parameters thusly:

> Mutual mistake exists where both parties to a contract are unaware of the existence of a past or present fact *material* to their agreement. WIS JI-CIVIL 3072. This unawareness or belief, however, must arise from a lack

---

[7] All references to the Wisconsin Statutes are to the 2011–12 version.

of knowledge of the *possibility* that the fact may or may not exist. *Id.* If there was conscious doubt or uncertainty on the part of the parties as to the existence or nonexistence of a fact or situation, and the parties reached an agreement under such circumstances, it is considered that it was their intention and contemplation to accept and compromise the consequences of the doubt and uncertainty, and they would not then be acting under mutual mistake of fact. *Id.* For a mistake to be mutual, it must involve both parties.[8] *Id.*

*Gielow*, 268 Wis. 2d 673, ¶ 22 (footnote omitted; emphasis added). The party seeking reformation of a contract because of mutual mistake must prove by clear and convincing evidence that the written agreement does not set forth the parties' intentions due to a mutual mistake. *See Williams v. State Farm Fire & Cas. Co.*, 180 Wis. 2d 221, 233, 509 N.W.2d 294 (Ct. App. 1993).

¶ 16. Based on that law, we conclude that the Ivancevics have failed to set forth a valid mutual-mistake claim because they have failed to produce any evidence that the sales contract entered into by the Ivancevics and the Reagans, that is, the Option to Purchase, guaranteed them a defect-free home. On summary judgment, the Ivancevics, as the party seeking reformation, were required to present evidence of the possibility that the parties were mutually unaware of a fact *material to their agreement* at the time they entered into it. *See Gielow*, 268 Wis. 2d 673, ¶ 22 ("Mutual mistake exists where both parties to a contract are unaware of the existence of a past or present fact material to their agreement."). But the Ivancevics have presented no evidence that the

---

[8] A mistake by one party may be enough if the other party engaged in fraud. *Gielow v. Napiorkowski*, 2003 WI App 249, ¶ 23, 268 Wis. 2d 673, 673 N.W.2d 351. The Ivancevics do not allege that the Reagans' actions here were fraudulent.

Option to Purchase contemplated the sale of a defect-free home. In fact, the circuit court dismissed the Ivancevics' contract claim, which was based on their argument that the Reagans represented that the Residence would be defect free, and the Ivancevics did not appeal that dismissal.

¶ 17. Although the parties argue extensively in their briefs about whether the Ivancevics knew of the possibility that the ventilation system was defective when they entered into the sales agreement, we need not reach that issue because we conclude that the Ivancevics have failed to offer any evidence that the parties were unaware of a fact material to the sales agreement. The plain language of the Option to Purchase did not guarantee the Ivancevics that the Residence would be defect free.

¶ 18. The Ivancevics contend that they were promised that the Residence would be delivered without defect and in compliance with building codes. In so arguing, they rely on the Lease, which states that the Residence would "be delivered in clean condition and good repair, free of mold and toxic substances, suitable for habitation in compliance with all laws." Because paragraph fourteen of the Lease, by its express terms, incorporated the Option to Purchase, the Ivancevics believe that the Lease's representation of a defect-free home was incorporated into the Option to Purchase. Paragraph fourteen of the Lease, states:

> *OPTION TO PURCHASE:* In consideration of Tenant's willingness to enter into this Lease Agreement on the rental terms set forth herein and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, Landlord grants to Tenant an option to purchase the Leased Premises on the terms and conditions set forth in the Option to Purchase

dated March __, 2009 a copy of *which is attached hereto and incorporated herein by reference.* The parties acknowledge that the Security Deposit & Option Fee is consideration from Tenant for the grant of the Option to Purchase.

(Emphasis added.)

¶ 19. The Reagans counter that the Lease and the Option to Purchase were stand-alone documents, one governing the tenant-landlord relationship and the other governing the buyer-seller relationship. The Lease ceased to be controlling when the Ivancevics stopped being tenants under the Lease and became owners under the Option to Purchase. The Reagans argue that the Option to Purchase was the sales contract setting forth the terms of the Ivancevics' purchase of the Residence and that the four corners of the Option to Purchase do not incorporate the Lease's terms, and do not guarantee that the Residence is either defect free or compliant with building codes. We agree with the Reagans.

■■

¶ 20. When construing a contract, "the best indication of the parties' intent is the language of the contract itself." *Town Bank v. City Real Estate Dev., LLC*, 2010 WI 134, ¶ 33, 330 Wis. 2d 340, 793 N.W.2d 476. Thus, we construe contract language according to its plain or ordinary meaning, and "[i]f the contract is unambiguous, our attempt to determine the parties' intent ends with the four corners of the contract, without consideration of extrinsic evidence." *Huml v. Vlazny*, 2006 WI 87, ¶ 52, 293 Wis. 2d 169, 716 N.W.2d 807.

¶ 21. Here, the operative sales document is the Option to Purchase and the Option to Purchase does not mention the Lease. To the contrary, the Option to Purchase explicitly states that: "This Option, including any amendments to it, contains the entire agreement of

149

the Buyer and Seller regarding the transaction. All prior negotiations and discussions have been merged into this Option." In other words, the plain language of the Option to Purchase makes it clear that the terms of the Lease are not part of the sales contract.

¶ 22. As to the condition of the Residence, the Option to Purchase makes the following representations:

> REPRESENTATIONS REGARDING PROPERTY AND TRANSACTION Seller represents to Buyer that as of the date Seller grants this Option Seller has no notice or knowledge of conditions affecting the Property or transaction . . . other than those identified in Seller's property condition report,[9] dated _____, which was received by Buyer prior to Buyer signing this Option.

Thus, the Reagans represented that they had no notice or knowledge of defects and the Ivancevics do not dispute that fact. By no stretch of the imagination does the language indicate that the Reagans were guaranteeing that the Residence was defect free. In fact, the Option to Purchase includes a "BUYER DUE DILIGENCE" clause that recognizes that before purchasing the Residence the Buyers "may need to perform certain inspections, investigations and testing."

---

[9] As we noted in the Background section, the seller's property condition report is not in the record. The appellant (in this case, the Ivancevics) has the responsibility of providing a complete record, and to the extent material is missing, we will assume it supports the circuit court's ruling. *See State v. Provo*, 2004 WI App 97, ¶ 19, 272 Wis. 2d 837, 681 N.W.2d 272 ("It is the appellant's responsibility to ensure completion of the appellate record and when an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the [circuit] court's ruling.") (citations and internal quotation marks omitted).

¶ 23. In short, the Ivancevics' reliance on the language in the Lease is misplaced. Furthermore, they have not produced any evidence to support their mutual-mistake claim because the Option to Purchase shows no evidence that the parties agreed that the Residence would be defect free. *See Williams*, 180 Wis. 2d at 233.

¶ 24. The parties expend some effort in their briefs arguing over whether the evidence shows that the Ivancevics knew of the possibility of the attic moisture problem, such that there could be no mutual mistake under *Gielow. See id.*, 268 Wis. 2d 673, ¶ 22 ("unawareness or belief . . . must arise from a lack of knowledge of the possibility that the fact may or may not exist"). Because we have concluded that the Ivancevics failed to present any evidence of a mutual agreement that the home was defect free, we need not address whether they are foreclosed from relying on that mutual agreement due to their knowledge that the home possibly had a mold problem.[10]

## B. The Reagans' Cross-Appeal: Sanctions.

██

¶ 25. We now turn to the Reagans' cross-appeal, in which they complain that the circuit court improperly

---

[10] We note that in *Gielow* this court construed a release, not, as here, a home sales contract. Given our conclusion that the mutual-mistake doctrine is inapplicable here because the Ivancevics have not demonstrated that the parties bargained for a defect-free home, we need not address the economic loss/public policy arguments that arise when applying the doctrine of mutual mistake to home sales contracts. We note however, as we did in *Gielow*, that there is an exception to the usual economic-loss prohibition to tort claims arising out of a contract for the fraud-in-the-inducement situation, but need not address it here. *See id.*, 268 Wis. 2d 673, ¶¶ 29–32.

denied their motion for sanctions against the Ivancevics. The Reagans sought sanctions against the Ivancevics in the circuit court pursuant to Wis. Stat. § 802.05(3), arguing that the Ivancevics' claims were frivolous. We affirm the circuit court's order denying their motion.

¶ 26. We apply two different standards of review to allegations that a lawsuit is frivolous: one for determining whether actions are commenced frivolously and a second for determining whether actions are continued frivolously. *Storms v. Action Wis., Inc.*, 2008 WI 56, ¶ 33, 309 Wis. 2d 704, 750 N.W.2d 739. Our review of the circuit court's decision that an action was commenced frivolously is deferential. *Id.*, ¶ 34. Determining what and how much pre-filing investigation was done are questions of fact that will be upheld unless clearly erroneous. *Id.* The determination as to how much investigation should have been done is also a matter within the circuit court's discretion. *Id.* The circuit court's discretionary decisions will be sustained so long as the circuit court " 'examined the relevant facts, applied a proper standard of law and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.' " *Id.* (citation omitted).

██ ██

¶ 27. With regard to whether an action was continued frivolously, what an attorney knew or should have known is a question of fact. *Id.*, ¶ 35. Then, whether the facts found by the circuit court support a finding of no basis in law or fact is a question of law which we review *de novo. Id.* All doubts regarding whether a claim is frivolous " 'are resolved in favor of the party or attorney' whom it is claimed commenced or

continued a frivolous action." *Howell v. Denomie*, 2005 WI 81, ¶ 8, 282 Wis. 2d 130, 698 N.W.2d 621 (citation omitted).

¶ 28. An attorney files a frivolous action when he or she fails to comply with WIS. STAT. § 802.05(2), which states:

> By presenting to the court, whether by signing, filing, submitting, or later advocating a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following:
>
> (a) The paper is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
>
> (b) The claims, defenses, and other legal contentions stated in the paper are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.
>
> (c) The allegations and other factual contentions stated in the paper have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
>
> (d) The denials of factual contentions stated in the paper are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

¶ 29. The Reagans complain that the circuit court erred when it denied their motion for sanctions because they believe that there is no basis in either fact or law

to support the Ivancevics' claims.[11] They argue that both claims rely on the frivolous assertion that the terms of the Lease control the sale of the Residence and that the Ivancevics' claims are otherwise contrary to the law.

¶ 30. The circuit court ruled as follows:

> The defendants brought additional motions seeking imposition of sanctions under 802.05(3). I'm not going to hear further argument on that. I'm going to deny the motion outright. I just don't find this to be[,] in my judgment at least[,] a circumstance at this point where I would feel that there was a frivolous filling [sic] of any pleading or other items by the plaintiffs.
>
> . . . I think it's fair to plead on information and belief if you believe that at least there is some possibility of discovery or facts at least during the course of discovery that might otherwise supported a specific misrepresentation and breach claim and apparently that didn't develop.
>
> On the issue, the legal issue involving mutual mistake, it's not a circumstance — it's a circumstance where I think the plaintiffs certainly have made an argument, and I won't say it's a fair one. In the end on the facts or on the law find, I don't find it to be persuasive, but it's not a circumstance where I find the plaintiffs made a frivolous claim.

---

[11] Both parties spend a great deal of time and energy arguing over whether the Ivancevics should have instead filed their claims against Lemel Homes. However, whether the Ivancevics could have filed their claims against Lemel Homes and why they chose not to file their claims against Lemel Homes are questions irrelevant to the issue presented by the Reagans' cross-appeal. The only issue before us is whether the claims that the Ivancevics did file, those against the Reagans, were so frivolous that the circuit court erred in denying the Reagans' motion for sanctions.

¶ 31. In other words, the circuit court admitted that the Ivancevics' claims were thin, but concluded that they set forth enough in the complaint to permit them some limited discovery. In doing so, the circuit court did not erroneously exercise its discretion in determining that the claims were not frivolously commenced.

¶ 32. The circuit court then spent forty-seven pages of the fifty-page summary judgment transcript discussing the claims with the parties and ultimately deciding the various merits of the Ivancevics' claims. The depth of discussion implies that the circuit court found the claims to hold at least some merit, even though the Ivancevics did not ultimately prevail. We agree with the circuit court that, as a matter of law, the claims were not continued frivolously.

¶ 33. Additionally, the Reagans filed a motion with this court, pursuant to Wis. Stat. § 809.25(3), asking us to conclude that the Ivancevics' appeal is frivolous, and requesting reasonable attorney's fees. We deny their motion. The Ivancevics brought only one narrowly defined issue before this court: Whether the circuit court properly dismissed their mutual-mistake claim. They have pointedly abandoned their contract claim. While the substance of their mutual-mistake claim is not strong, it is not meritless. There is very little caselaw on when to apply the mutual-mistake doctrine to sales contracts; the parameters of the doctrine in this context are not well-defined. Furthermore, a party's claims are not frivolous just because those claims do not ultimately succeed.

*By the Court.*—Judgment affirmed.