SEIDL, J.[1]
¶1 Bruce Edgerton appeals from a small claims money and replevin judgment entered in favor of Gary Bakley after a bench trial. First, Edgerton contends the circuit court erred in awarding the money judgment and dismissing his counterclaim alleging that Bakley failed to reimburse Edgerton for Edgerton's payment of certain "broker fuel advances." Second, Edgerton argues the circuit court erred in failing to order Bakley to refund Edgerton's past payment on an "auxiliary power unit" (the "Unit") when it granted Bakley replevin of the Unit. Bakley cross-appeals, arguing that the circuit court erred by declining to sanction Edgerton for a postjudgment motion that Bakley contends was frivolous.
¶2 We affirm the money judgment, the dismissal of Edgerton's counterclaim, and the denial of Bakley's motion for sanctions. We reverse the court's determination regarding the refund of the payment on the Unit. On remand, we direct the circuit court to modify the replevin judgment and order Bakley to refund Edgerton for the payment as a condition of Bakley's replevin of the Unit.
BACKGROUND
¶3 Edgerton operates a trucking business where he leases his trucks and his agency-issued authority to conduct interstate and intrastate commerce operations to other drivers. Under those leasing agreements, Edgerton works with other brokers to obtain shipping loads and then hires independent truck drivers to deliver those loads to their destinations. Bakley, a truck driver, entered into an agreement with Edgerton to ship loads Edgerton obtained from brokers for a period of two years, beginning in April 2015. Under their agreement, Bakley received eighty percent of the payment for the shipment of loads while Edgerton received twenty percent.
¶4 The shipping agreement also required Bakley to reimburse Edgerton for fuel advances. Fuel advances covered the cost of fuel Bakley used to complete each run, but were paid for by Edgerton. Bakley received fuel advances in two different ways. One was through a fuel credit card Edgerton provided to Bakley so that he would not need to pay for fuel out-of-pocket during a run. Additionally, Edgerton allowed Bakley to receive fuel funds directly from the brokers. The brokers provided Bakley the requested funds and then invoiced Edgerton directly for the money they provided by reducing the final amount paid to Edgerton. The parties' shipping agreement then required Bakley to reimburse Edgerton for all the fuel advances, whether coming from the provided fuel credit card or by the brokers, incurred on a run. Both parties also agreed that Edgerton would subtract the fuel advances Bakley owed before remitting payment to Bakley for each run.
¶5 In a separate transaction from the shipping agreement, Bakley orally agreed to sell the Unit to Edgerton, but they later disagreed as to the purchase price.[2] Bakley had unsuccessfully attempted to sell the Unit over the Internet for $3000, and Edgerton agreed to buy the Unit and took possession of it after the attempted sale. Edgerton paid Bakley $1200 for the Unit, but there was a disagreement as to whether this payment constituted the final sale price.[3] Edgerton testified that he believed the final price was $1200. On the other hand, Bakley testified that he told Edgerton the price was $3000, and he believed Edgerton's payment of the balance of $1800 would be forthcoming.
¶6 Bakley filed a small claims complaint against Edgerton regarding both the shipping agreement and the Unit sale. Bakley claimed that Edgerton failed to pay him $1412.21 for three loads he delivered in March of 2017. Bakley also requested replevin of the Unit because of Edgerton's failure to pay the full purchase price. Edgerton counterclaimed for $3826.93 in various unpaid costs, primarily consisting of several of the broker fuel advance credits that Edgerton claimed Bakley had not reimbursed.
¶7 The case proceeded to trial, at which Bakley and Edgerton testified and submitted several exhibits pertaining to various expenses. Based on this evidence, the circuit court awarded Bakley $1321 on the shipping agreement plus $300 in statutory attorney fees, and it denied Edgerton's counterclaim for unreimbursed broker fuel advances.[4] The court granted Bakley replevin of the Unit and, over Edgerton's objections, declined to order that Bakley refund the $1200 Edgerton paid to Bakley.
¶8 After judgment was entered, Edgerton filed a motion pursuant to WIS. STAT. § 810.05 to modify the replevin judgment pertaining to the Unit. Edgerton sought an order requiring Bakley to return the $1200 payment for the Unit, arguing that neither WIS. STAT. ch. 810 nor equity permitted Bakley to obtain the Unit and retain the amount Edgerton paid for it. In response to Edgerton's motion, Bakley moved for sanctions pursuant to WIS. STAT. § 802.05(3), arguing the motion was frivolous because it could not be brought under § 810.05 after the replevin judgment had been entered. The court declined to modify the replevin judgment and denied Bakley's motion for sanctions after concluding that Edgerton's motion was not frivolous. Edgerton now appeals the judgment, and Bakley cross-appeals the court's order declining to award sanctions.
DISCUSSION
I. Broker fuel advances
¶9 Edgerton seeks reversal of the $1321 money judgment entered in favor of Bakley, and he further requests we direct the circuit court to enter judgment in his favor on his counterclaim for $3676.93.[5] Edgerton narrows his challenge to the court's finding that Edgerton had already deducted Bakley's pay pursuant to the agreement for the broker fuel advances that Bakley received.
¶10 Our standard of review affords significant deference to the circuit court's decisions in this case. We shall not overturn a circuit court's findings of fact unless they are shown to be clearly erroneous. WIS. STAT. § 805.17(2). When the circuit court acts as the finder of fact, it is the ultimate arbiter of credibility. Onalaska Elec. Heating, Inc. v. Schaller , 94 Wis. 2d 493, 501, 288 N.W.2d 829 (1980). If there are multiple reasonable inferences that can be drawn from the evidence, we cannot reject a reasonable inference the circuit court draws. Id.
¶11 Edgerton contends he presented to the circuit court his "full accounting" and that, based upon his accounting, he was entitled to reimbursement for the broker fuel advances that Bakley had not reimbursed. Edgerton submitted a document entitled "2017 Accounting for Gary Bakley" that showed Bakley as having an outstanding net debt of $3676.93 to Edgerton, primarily consisting of the unreimbursed broker fuel advances. Edgerton argues the court failed to cite evidence or explain why the fuel advances should not have been credited to him given Bakley's testimony that he directly received the advances from the brokers. Because of these contentions, it appears Edgerton argues the court erred when it "entered as judgment against Edgerton the Broker Fuel Advances deductions Edgerton took out of Bakley's gross" account, not for the March 2017 runs for which Edgerton did not pay Bakley.[6]
¶12 The circuit court, however, made no determination that Edgerton was not entitled to deductions for fuel advances. It awarded Bakley $1321 after Bakley presented evidence and documentation that he did not owe Edgerton for any fuel advances, and that Edgerton had not paid Bakley for several costs associated with shipping runs in March 2017. In fact, Edgerton conceded in his own testimony that he could not "deny that [he] owe[d]" Bakley for those runs. The court stated it was "satisfied" by Bakley's evidence on those costs. The record on appeal supports that finding.
¶13 For example, Bakley testified that the "fuel advances, repair bills, [and] any fuel charges from the months prior to March would have already been deducted from" what Edgerton owed him. Bakley also itemized several deductions for the runs pursuant to the shipping agreement, which showed that Edgerton already included a deduction for the broker fuel advances prior to March 2017.
¶14 Additionally, the circuit court, in reviewing Edgerton's documentation for 2017, found that Edgerton failed to submit a specific accounting of the deductions taken from each run for the broker fuel advances before March 2017. The court observed that Edgerton had failed to submit any specific accounts or charges showing whether the brokers had paid the fuel advances to Bakley for any runs prior to March 2017. While Edgerton testified that Bakley had received pre-March 2017 advances without refunding them to Edgerton, the court determined that Edgerton had not submitted proof in support of that claim, terming Edgerton's claim for the prior fuel advances as "double bookkeeping" bereft of any explanatory accounting. Thus, the record shows that the circuit court cited evidence and explained its reasoning for why the fuel advances should not have been credited to Edgerton.
¶15 Moreover, although the circuit court did not specifically find Edgerton incredible and Bakley credible on this issue, it implicitly made those findings consistent with its ultimate conclusion. See Jacobson v. American Tool Cos. , 222 Wis. 2d 384, 390, 588 N.W.2d 67 (Ct. App. 1998) (we may assume a circuit court has made implicit findings on a witness's credibility when reviewing the evidence of record). We are bound by those findings on appeal. See Schaller , 94 Wis. 2d at 501. Because Edgerton has not shown that the circuit court's findings were clearly erroneous, and those findings support the court's conclusion of law, we affirm the court's award of $1321 to Bakley and its dismissal of Edgerton's counterclaim.
II. Replevin of the Unit
¶16 The circuit court awarded replevin of the Unit based upon its interpretation of WIS. STAT. ch. 810. "The construction of a statute and its application to undisputed facts are questions of law which we determine de novo." Global Steel Prods. Corp. v. Ecklund Carriers, Inc. , 2002 WI App 91, ¶ 11, 253 Wis. 2d 588, 644 N.W.2d 269.
¶17 Edgerton does not argue the circuit court erred by granting Bakley replevin of the Unit. However, Edgerton contends the court should have awarded him a "refund" of the $1200 payment he made to Bakley on the Unit. He essentially argues that "it is not fair or equitable" for Bakley to retain both the Unit and the $1200 he paid Bakley. Specifically, Edgerton contends WIS. STAT. ch. 810 does not authorize such a determination. We agree.
¶18 WISCONSIN STAT. § 810.14 governs judgments in a replevin action, and it states in full:
In any action of replevin judgment for the plaintiff may be for the possession or for the recovery of possession of the property, or the value thereof in case a delivery cannot be had, and of damages for the detention ; and when the property shall have been delivered to the defendant, under s. 810.06, judgment may be as aforesaid or absolutely for the value thereof at the plaintiff's option, and damages for the detention . If the property shall have been delivered to the plaintiff under ss. 810.01 to 810.13 and the defendant prevails, judgment for the defendant may be for a return of the property or the value thereof, at the defendant's option, and damages for taking and withholding the same.
Sec. 810.14 (emphasis added). In addition to either possession or a money judgment for the sought-after property's value, a plaintiff may recover damages for interest and depreciation of the recovered property's value. Global SteelProds. , 253 Wis. 2d 588, ¶ 18. If a plaintiff elects to take the value of the property rather than possession of it, he or she may claim damages for interest in the value of the property but not damages due to loss of use. Barclay Brass & Aluminum Foundry, Inc. v. Resnick , 35 Wis. 2d 620, 630, 151 N.W.2d 648 (1967).
¶19 As Edgerton correctly observes, nothing in WIS. STAT. ch. 810 expressly allows a plaintiff to retain payment of a partial purchase price if replevin is granted. In addition, Bakley made no claim related to the Unit for damages or interest under that statute. Although the parties argue whether several very old cases from other jurisdictions involving replevin provide guidance in this context, those cases are of questionable applicability here and do not aid us on the issue. In our view, it is more appropriate to address this issue in the context of a court's equitable authority to fashion a remedy.
¶20 Equitable authority permits a court to "grant equitable remedies to private litigants in situations in which there is no explicit statutory authority or in which the available legal remedy is inadequate to do complete justice." Breier v. E.C. , 130 Wis. 2d 376, 388, 387 N.W.2d 72 (1986). Wisconsin courts have "broad flexibility" to fashion equitable remedies based upon the circumstances of a given situation. See Nationstar Mortg. LLC v. Stafsholt , 2018 WI 21, ¶ 30, 380 Wis. 2d 284, 908 N.W.2d 784 ; see also American Med. Servs., Inc. v. Mutual Fed. Sav. & Loan Ass'n , 52 Wis. 2d 198, 205, 188 N.W.2d 529 (1971). However, "a court may not exercise its equitable authority if such exercise would ignore a statutory mandate." GMAC Mortg. Corp. v. Gisvold , 215 Wis. 2d 459, 480, 572 N.W.2d 466 (1998).
¶21 We review a circuit court's exercise of equitable power under an erroneous exercise of discretion standard. See Associated Bank N.A. v. Collier , 2014 WI 62, ¶ 22, 355 Wis. 2d 343, 852 N.W.2d 443. A discretionary decision will be sustained as long as the court examined the relevant facts, applied a proper standard of law and, using a demonstrated rational process, reached a reasonable conclusion. Id.
¶22 Given the lack of controlling authority on this issue, we conclude the circuit court erroneously exercised its discretion by failing to award Edgerton the $1200 he paid toward the Unit. Edgerton invoked the court's equitable authority by arguing that it was not an equitable outcome. We agree that having Edgerton forfeit both the Unit and his payment is clearly an unfair result. The purpose of WIS. STAT. § 810.14 is to make replevin plaintiffs "whole," not to bestow "windfall[s]" upon them. See Global Steel Prods. , 253 Wis. 2d 588, ¶ 20.
¶23 Bakley suggests that equity leans in his direction because "the circuit court took the disagreement of the purchase price into consideration" as a factor for declining to refund the $1200 payment. We are unpersuaded the purchase price disagreement should affect the equitable result required here. First, it is unclear why a disagreement over the purchase price should result in Edgerton returning the Unit without a refund of his $1200. Second, it is undisputed that both parties disagreed over the purchase price. Edgerton bears no more fault than Bakley for this disagreement. Finally, the parties have cited no statutory prohibitions against the court exercising its equitable authority or preventing Edgerton from reclaiming the purchase price. In all, we conclude the circuit court erroneously exercised its discretion in refusing to compel return of the $1200 to Edgerton. We therefore reverse and direct the court on remand to modify the replevin judgment by ordering that Edgerton receive the $1200 reimbursement upon Bakley's replevin of the Unit.
III. Bakley's cross-appeal
¶24 Bakley argues the circuit court erred when it denied his motion for sanctions, pursuant to WIS. STAT. § 802.05(3), stemming from what he argues was Edgerton's frivolous postjudgment motion. We review the circuit court's decision on whether Edgerton's motion was frivolous for an erroneous exercise of discretion. See Ivancevic v. Reagan , 2013 WI App 121, ¶ 26, 351 Wis. 2d 138, 839 N.W.2d 416. A claim is frivolous when a party or attorney knew or should have known that the claim was without any reasonable basis in law or equity. See Howell v. Denomie , 2005 WI 81, ¶ 8, 282 Wis. 2d 130, 682 N.W.2d 621. All doubts regarding frivolousness are resolved in favor of the party against whom frivolousness is claimed. See Ivancevic , 351 Wis. 2d 138, ¶ 27.
¶25 Bakley argues Edgerton's postjudgment replevin motion was frivolously brought because it was not permitted under WIS. STAT. ch. 810, and, in particular, WIS. STAT. § 810.05. According to Bakley, § 810.05 allows a defendant to move to vacate or modify only an "order directing the return of property to a plaintiff" pursuant to WIS. STAT. § 810.02.[7]
¶26 We need not reach this issue of statutory interpretation. Even if we were to assume that Edgerton incorrectly interpreted WIS. STAT. § 810.05, and that his motion was statutorily improper, this court has concluded that the underlying merits of Edgerton's motion-that he is entitled to receive his $1200 payment on the Unit-were correct on equitable grounds. The success of Edgerton's argument on appeal is a conclusive factor that supports the circuit court's decision not to sanction Edgerton. The court properly exercised its discretion when it reached that conclusion. See Ivancevic , 351 Wis. 2d 138, ¶ 26. We therefore affirm the circuit court's denial of the motion for sanctions.
¶27 No WIS. STAT. RULE 809.25 costs are allowed to either party.
By the Court. -Judgment affirmed in part; reversed in part and cause remanded with directions; order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Bakley explained at the trial that an auxiliary power unit "is a generator that runs your truck so you don't have to keep your truck running. It runs your heat and your air conditioning so you don't burn your fuel up."

A slight discrepancy existed between Bakley and Edgerton as to the exact amount Edgerton paid for the Unit. Bakley testified that he received $1200 from Edgerton for the sale, while Edgerton claimed to have paid Bakley $1250 for the Unit. At the hearing on Bakley's postjudgment motion, the circuit court referred to Edgerton having paid $1200 and owing $1800 for the Unit. We interpret that reference as a factual finding that Edgerton paid $1200 for the Unit, and we are bound by that finding on appeal. See Wis. Stat. § 805.17(2).

The circuit court initially awarded $1412.21 to Bakley, but it reduced that amount after Bakley conceded he owed Edgerton $100 for March 2017 insurance. The court, however, subsequently entered judgment in the amount of $1321, which is $8.79 more than its oral ruling. Although Bakley briefly mentions this issue in his response brief, we decline to address this discrepancy because neither party adequately developed the issue on appeal. See M.C.I., Inc. v. Elbin , 146 Wis. 2d. 239, 244-45, 430 N.W.2d 366 (Ct. App. 1988).

Edgerton now only seeks $3676.93 after originally counterclaiming for $3826.93.

In his brief-in-chief, Edgerton asserts that Bakley has "abandoned" his claims for damages in this appeal because Bakley's "docketing statement on cross[-]appeal made no reference to continuing with a claim for damages." his assertion is unsupported by any developed reasoning or legal authority, and we do not consider it as a result. See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

Wisconsin Stat. § 810.05 states, in relevant part: "The defendant may at any time upon notice to the plaintiff move the court or the presiding judge thereof to vacate or modify the order directing delivery of the property for any sufficient cause." In addition, Wis. Stat. § 810.02 states, in relevant part: "An order directing the return of property to the plaintiff at any time before final judgment in a replevin action shall be issued only by a judge or other judicial officer on the affidavit of the plaintiff made after summons is issued."