PER CURIAM.
¶1 Gianni Bozzacchi appeals from an order denying his motion for relief from an April 2009 order that required him to mortgage his home. Bozzacchi argues the mortgage should have been reformed to expire after December 31, 2011. We affirm the circuit court.
BACKGROUND
¶2 In 2002, Kleos Capital Partners LP, loaned $ 500,000 to Triworld Holding Co. LLC, of which Bozzacchi was a member. Triworld had ambitions of developing a "Renaissance Project," which would consist of a television series, feature films, DVDs, books and other media; a theme park, a shopping center, hotels, and other real property developments; and broadcast rights, copyrights, and other intellectual property, all based around the Renaissance historical period
¶3 Bozzacchi executed a promissory note on behalf of Triworld. He also personally entered into a Security Agreement giving Kleos a security interest in more than 120 photographic negatives of actors Elizabeth Taylor and Richard Burton; Bozzacchi had been Taylor's personal photographer for a time. At one time, these negatives were apparently appraised for more than $ 4.8 million. We will refer to the negatives as the "collateral" or "photographic collateral."
¶4 The Renaissance Project never really gained traction, and the original loan was not paid off at maturity. Kleos extended the maturity date on several occasions in exchange for adjustments to the interest rate. When the loan remained unpaid, Kleos commenced the underlying case in May 2008, seeking to take possession of the collateral, a money judgment, and a declaration of Kleos's interest in Triworld as set out in the loan agreement. The case proceeded with a series of motions, stipulations, and orders, a summary of which is necessary to understanding the issue on appeal.
A. The Preliminary Injunction
¶5 Not long after the case was initiated, the circuit court[1] signed an "order granting motion for preliminary injunction" based on the parties' stipulation. This order, entered on July 14, 2008, required Bozzacchi to disclose the location of the photographic collateral and the number and location of any copies. Bozzacchi was also "ordered to establish or maintain a policy or policies of insurance on the collateral insuring its value."
B. The Stipulated Resolution
¶6 In November 2008, Kleos moved for summary judgment on the complaint and for sanctions related to Bozzacchi's answer to the complaint. A motion hearing was set for January 12, 2009, by which point the parties had reached an agreement. The circuit court entered an "order resolving claims," again pursuant to the parties' stipulation. This order: (1) declared the amount due and owing to Kleos was $ 1,401,118.17; (2) declared Kleos had a security interest in the "photographic negatives," copies thereof, and related rights pledged as security; (3) required Bozzacchi to deposit the collateral in a safe deposit box by January 22, 2009; and (4) required Bozzacchi to provide, by January 26, 2009, "a certificate of insurance showing that the above reference[d] collateral is insured for a value of no less than $ 2,500,000 through at least December 31, 2011, and that Kleos Partners is named as an insured secured party[.]" The stipulation and order further provided that if Bozzacchi "fails [or] is unable to provide Kleos Partners with proof of such insurance ... Bozzacchi shall provide Kleos Partners with a mortgage on any real estate he owns ... in the United States[.]"
C. Motions for Entry of Judgment and Contempt
¶7 In April 2009, Kleos filed a "motion to reopen and for immediate entry of judgment, issuance of writ of replevin and warrant," along with a motion to find the defendants in contempt of court, based in part on Bozzacchi's failure to deposit the collateral in the safe deposit box and his failure to provide the certificate of insurance or a mortgage on real estate as required by the prior order. The circuit court conducted a motion hearing on April 21, 2009. Bozzacchi argued that he had deposited a DVD with digital copies of the negatives; Kleos contended that Bozzacchi needed to turn over the original film negatives in addition to any digital copies that he had. Bozzacchi also told the circuit court that he was working on getting insurance, which the circuit court took as an admission that insurance had not yet been obtained. The circuit court declined to issue a writ or a warrant, preferring to try to avoid involving the sheriff and to give defendants a chance to come into compliance.
¶8 On April 27, 2009, the circuit court entered an order for judgment based on the hearing. It declared that Kleos shall receive $ 1,501,121.85 and additional attorney fees, plus interest, from Triworld. The order further gave Kleos "the immediate and unrestricted right" to take possession of the photographic collateral and ordered Bozzacchi to provide either "a certificate of insurance showing that Collateral is insured for a value of no less than $ 2,500,000 through at least December 31, 2011 ... [or] a mortgage on any real estate [he] owns ... in the United States, on or before 3:00 p.m. on April 28, 2009."
D. Order to Show Cause
¶9 On May 1, 2009, Kleos wrote to the circuit court to advise that Bozzacchi still had not turned over the collateral or provided either the proof of insurance or a mortgage. The circuit court issued an order to show cause and scheduled a hearing for June 4, 2009. On May 28, 2009, Bozzacchi filed a motion to modify and amend the judgment and dismiss the order to show cause. Among other things, Bozzacchi requested that the circuit court amend the judgment to state "that since the security has been surrendered, there's no continuing obligation on the part of the Defendants to obtain insurance on the security."
¶10 At the June 4, 2009 hearing, Bozzacchi attempted to persuade the circuit court that he was in full compliance with what Kleos had prayed for in the complaint. The circuit court reminded him that they were not in court because of the complaint any longer but "on the orders that were based upon stipulations freely entered into between the parties." Bozzacchi went on to ask the circuit court, "If we have turned over the collateral ... why do we have to continue with the insurance aspect of it, because of the fact that we-the insurable interest is not there any more [sic]. It's gone." The circuit court explained:
You entered into a stipulation. You entered into an agreement that was bargained for. Having entered into the agreement, you have to comply with the agreement. You negotiated with the other side. You reached an understanding. It was reduced to writing. It was signed. It was presented to a court, and it was made a court order.
¶11 On July 2, 2009, the circuit court entered an order based on the June hearing.[2] This order found in relevant part that Bozzacchi had: (1) failed to comply with the provisions of the July 14, 2008 order that required him to disclose the location of the collateral, to disclose the number and location of recorded copies of the collateral, and to "establish or maintain a policy or polices of insurance on the Collateral"; (2) failed to comply with the provisions of the January 12, 2009 stipulation and order that required him to deposit the collateral in a safe deposit box and provide Kleos "with a certificate of insurance" or "a mortgage on any real estate he owns ... in the United States"; and (3) failed to comply with the provisions of the April 27, 2009 order for judgment that required him to turn over the collateral to Kleos's attorneys and to "provide Kleos'[s] attorneys with a certificate of insurance ... [or] provide Kleos with a mortgage on any real estate Mr. Bozzacchi owns ... in the United States[.]" Based on these failures, the new order directed that Bozzacchi,
both personally and in his capacity as a member of defendant Triworld Holding Co. LLC, shall comply with the provisions of the orders referred to, above, on or before June 15, 2009, and to the extent that he does not fully comply with the provisions of the orders referred to, above, he shall file an affidavit with the Court on or before June 15, 2009, stating under oath the reasons for non-compliance by him and/or Triworld Holding Co. LLC[.]
E. Renewed Motion for Contempt
¶12 On September 24, 2009, Kleos renewed its motion to have Bozzacchi held in contempt of court. Kleos alleged that Bozzacchi had kept digital copies of the photographic collateral on his home computer and still had not provided a certificate of insurance or a mortgage. The circuit court[3] held a hearing on October 27, 2009. At the hearing, Bozzacchi's attorney again argued about compliance with the insurance/mortgage requirement:
The one issue, though, that I have a lot of trouble with, Your Honor, in this case is the issue of the insurance.... The reason that the insurance was supposed to be placed on my client's home ... was if he could not come up with the money to insure the items.
And if you look at the language, it says Kleos Partners, when the insurance is to be obtained, is named as the insured secured party on the policy. They have the collateral right now, Your Honor.
My client, they're no longer insured. They're a secured party. They have the collateral. It's theirs. I mean, why does my client have an obligation to continue with an insurance policy if they have the items.
¶13 After hearing further argument, the circuit court explained:
Well ... paragraph 5 [of the January 12, 2009 order] indicates that on or before January 22 [Bozzacchi] shall deposit the collateral and all copies in a safe deposit box.
... [T]hen the next paragraph says on or before January 26 [Bozzacchi] still needs to insure the property or provide the mortgage. So that's after the deposit of the pictures already in that safe deposit box.
....
As far as signing the mortgage, I understand counsel's argument as to the concern about insurance, but I think this is what was set out in the order. And I am going to order that he comply with the order at this point, signing the mortgage.
Based on the hearing, the circuit court entered an order providing that if Bozzacchi failed to provide the mortgage by November 11, 2009, he would be required to pay remedial sanctions of $ 200 per day and be subject to incarceration. The circuit court also set the matter for review on January 14, 2010.
¶14 As of January 12, 2010, the mortgage still had not been provided to Kleos. However, a mortgage on property in Franklin was provided by the time of the January 14, 2010 hearing. The parties then stipulated to, and the circuit court signed, an order dated January 14, 2010, that withdrew Kleos's motion for contempt against Bozzacchi.
CURRENT PROCEEDINGS
¶15 On November 8, 2016, Bozzacchi, by a new attorney, filed a "motion for relief from order." "[P]ursuant to Wis. Stat. § 806.07," Bozzacchi moved for relief "from an order dated April 27, 2009, ordering [him] to provide a security interest mortgage on his personally owned real property[.]" He asserted "that the purposes of this order have been satisfied, [so] it is no longer equitable that the judgment should have prospective application[.]" In the affidavit supporting the motion, Bozzacchi's attorney averred that Bozzacchi "surrendered the collateral to the [Kleos] in 2009, and, upon information and belief, has been in [Kleos's] possession ever since." He also asserted that "[i]t is inequitable to have Mr. Bozzacchi continue to indefinitely secure property for [which] he has no ownership, possession or control."
¶16 After the February 2017 hearing, the circuit court[4] denied the motion.
The court is going to find that there's no merit to [Bozzacchi's] motion for relief in the order. I find that Judge Lamelas did in fact hold a hearing on this and basically found, as [Kleos] indicated, that this is an attempt to relitigate the hearing from nine years ago. Maybe there's not [laches] but there seems to be res judicata.
To me this issue has been decided.... I'm not gonna take the extraordinary action of ordering a mortgage released when in fact the underlying debt has not been satisfied.... None of the mortgage judgment or other order of the court provided that the mortgage would release prior to the satisfaction of Triworld's indebtedness to Kleos.
Bozzacchi appeals.
STANDARD OF REVIEW
¶17 Motions brought under WIS. STAT. § 806.07 (2017-18)[5] "are addressed to the sound discretion of the circuit court." See Breuer v. Town of Addison , 194 Wis. 2d 616, 625, 534 N.W.2d 634 (Ct. App. 1995). Discretionary determinations "must be the product of a rational mental process by which the facts of record and law relied upon are stated and considered together for the purpose of achieving a reasoned and reasonable determination." Id. We will not disturb a discretionary decision unless discretion was erroneously exercised. See id. Indeed, "an appellate court will generally look for reasons to affirm discretionary decisions." Allstate Ins. Co. v. Brunswick Corp. , 2007 WI App 221, ¶5, 305 Wis. 2d 400, 740 N.W.2d 888.
DISCUSSION
¶18 Bozzacchi's appellant's brief makes no mention of WIS. STAT. § 806.07 or the applicable standard of review. Rather, he claims to be seeking reformation of the mortgage, claiming it should be given an end date of December 31, 2011, and released. In fact, in response to Kleos's § 806.07-related arguments, Bozzacchi asserts that he "is not seeking relief from the terms of the Order for Judgment or the Judgment itself by seeking to overturn the Judgment or any portion of it." Rather, he says he is seeking "relief from the inequitable effect of the language" in the mortgage and that he "seeks to have the Judgment enforced according to its explicit terms, including expiration of the mortgage requirement as of December 31, 2011, and by reformation of the onerous and improper terms of the mortgage instrument drafted by [Kleos's] counsel."
¶19 It is disingenuous for Bozzacchi to claim he is not seeking relief under WIS. STAT. § 806.07. His motion alleged that "it is no longer equitable that the judgment should have prospective application[.]" This is the precise language of § 806.07(1)(g). Further, neither the motion for relief nor the affidavit in support of the motion alleges a claim for reformation[6] and, as a general rule, this court does not consider issues raised for the first time in the appellant's brief. See Associated Bank, N.A. v. Brogli , 2018 WI App 47, ¶26, 383 Wis. 2d 756, 917 N.W.2d 37. We therefore review Bozzacchi's motion as it was pled-as a motion for relief under § 806.07.
¶20 Kleos notes that Bozzacchi's argument that he should not have had to give the mortgage because he surrendered the collateral was an argument previously raised and rejected in 2009. Kleos also points out that Bozzacchi could have appealed from the prior orders requiring the mortgage, but he did not, so Kleos contends that the circuit court properly invoked res judicata[7] to deny Bozzacchi's motion.
¶21 Bozzacchi replies that he could not appeal from the April 27, 2009 order or resulting judgment because the documents were based on his stipulation.[8] Bozzacchi also contends that it is incorrect to say that his arguments were previously heard by the circuit court, because he did not previously argue about the intent of the mortgage or that it should expire on December 31, 2011.
¶22 At the February 2017 hearing on Bozzacchi's motion for relief, his attorney argued:
The security interest in the house was merely to act as insurance for the collateral. However, once the collateral [was] surrendered, you know, he-that's no longer his property. He's no longer obligated to insure it contractually or otherwise....
....
... [Y]es, Mr. Bozzacchi was ordered a number of times to surrender the collateral. And for whatever reasons, he did not do it immediately. And the court awarded Kleos a security interest mortgage in Mr. Bozzacchi's home merely to act as insurance for the collateral....
....
... The insurance was that Mr. Bozzacchi could not pay for it. So again, instead of insurance, the court ordered the security interest mortgage in his home to insure the collateral, so to speak. After this order happened, Mr. Bozzacchi turned the collateral over. He surrendered the collateral....
....
... The order that gave a security interest in his home in lieu of insurance on the collateral should be lifted once there's no longer any collateral. It's not collateral anymore because he's given it up. It's surrendered. It's no longer his.
¶23 First, Bozzacchi has argued at least once before that the mortgage was "to act as insurance for the collateral."See supra , ¶12 ("The reason that the insurance was supposed to be placed on [Bozzacchi's] home ... was if he could not come up with the money to insure the items."). Bozzacchi has argued at least twice before that "once the collateral [was] surrendered ... [h]e's no longer obligated to insure it." See supra , ¶10 ("If we have turned over the collateral ... why do we have to continue with the insurance aspect of it, because of the fact that we-the insurable interest is not there any more."), ¶12 ("They have the collateral. It's theirs. I mean, why does [Bozzacchi] have an obligation to continue with an insurance policy if they have the items.").[9] However, claim preclusion prevents the relitigation of issues that have already been litigated in prior proceedings between the same parties. See Cirilli v. Country Ins. & Fin. Servs. , 2013 WI App 44, ¶14, 347 Wis. 2d 481, 830 N.W.2d 234.
¶24 Second, Bozzacchi contends that he could not have appealed the April 27, 2009 order because it was entered pursuant to his stipulation. However, Bozzacchi does not adequately explain why the April 27, 2009 order is suddenly inequitable and challengeable now if, as he maintains, it was not challengeable during the time for direct appeal. Similarly, Bozzacchi does not explain why he did not seek review of the July 2 or November 12, 2009 orders-both of which also required him to provide the mortgage but were not entered directly pursuant to a stipulation. In other words, if Bozzacchi thought that the circuit court was improperly requiring him to provide the mortgage notwithstanding the surrender of collateral, he should have appealed. Based on the foregoing, we conclude that the circuit court properly exercised its discretion when it declined to revisit the already-decided and long-settled mortgage requirement.
¶25 Finally, to the extent that Bozzacchi is claiming he should be relieved from the effects of the mortgage because he was mistaken about its purpose,[10] see WIS. STAT. § 806.07(1)(a), or because he believes Kleos acted "duplicitously and inequitably," thereby committing misconduct,[11] see § 806.07(1)(c), such motion for relief had to be brought within one year of entry of the challenged judgment or order, and an § 806.07 motion brought on other grounds had to be brought "within a reasonable time." See § 806.07(2). Because Bozzacchi has disavowed § 806.07 as the basis for relief, he makes no attempt to show his motion timing was reasonable. We therefore also conclude the motion for relief was untimely, no matter the basis.[12]
¶26 In sum, Bozzacchi's claim for relief has been previously litigated and, in any event, the WIS. STAT. § 806.07 motion for relief was untimely. Accordingly, we conclude that the circuit court properly denied the motion.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

At this time, the Honorable Elsa C. Lamelas was presiding.

The circuit court had also entered an order on June 11, 2009, sanctioning Bozzacchi's attorney and requiring him to pay $ 15,674.38 to Kleos within thirty days.

At this time, the case had been transferred to the Honorable Timothy A. Witkowiak.

At this time, the matter had been transferred to the Honorable David A. Hansher, who entered the order from which Bozzacchi appeals.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

"The general rule is that a contract may be reformed when the 'writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing.' " Vandenberg v. Continental Ins. Co. , 2001 WI 85, ¶50, 244 Wis. 2d 802, 628 N.W.2d 876 (citation omitted). "The party seeking reformation of a contract because of mutual mistake must prove by clear and convincing evidence that the written agreement does not set forth the parties' intentions due to a mutual mistake." Ivancevic v. Reagan , 2013 WI App 121, ¶15, 351 Wis. 2d 138, 839 N.W.2d 416.
The motion for relief alleges only that prospective application of the April 27, 2009 order is no longer equitable, and the affidavit in support only alleges that Bozzacchi was supposed to provide the mortgage as security for collateral which has already been surrendered. There is no allegation of mistake by any party.

The term "res judicata " has been replaced generally by the term "claim preclusion." See Kruckenberg v. Harvey , 2005 WI 43, ¶18 n.11, 279 Wis. 2d 520, 694 N.W.2d 879.

Bozzacchi complains that Kleos "never raised the issue of failure to exhaust appellate remedies" until this appeal. However, unlike an appellant, a respondent is generally permitted to employ any theory or argument that will permit us to affirm the trial court, even if it was not previously raised. See State v. Holt , 128 Wis. 2d 110, 124-25, 382 N.W.2d 679 (Ct. App. 1985), superseded on other grounds by statute , Wis. Stat. § 940.225(7) (1985-86).

As the circuit court observed, the January 2009 stipulation called for Bozzacchi to surrender the collateral by January 22, 2009, and to provide proof of insurance or the mortgage by January 26, 2009, so the parties' agreement had always contemplated that the insurance or mortgage would have to be provided even after surrender of the collateral.

We observe that the mortgage document that Bozzacchi executed clearly indicated it was being given "to secure payment of $ 1,501,121.85 evidenced by a note or notes, or other obligation ("Obligation") dated January 12, 2009 executed by Gianni Bozzacchi (Stipulation and Order Resolving Claims entered by the Milwaukee County Circuit Court in Case No. 08-CV-5577)[.]"

We note that the only sanctions for bad behavior in this case were imposed on Bozzacchi's original attorney, not any attorney for Kleos.

The circuit court appears to have addressed Bozzacchi's claim that the mortgage should have expired on December 31, 2011, by stating, "None of the mortgage judgment or other order of the court provided that the mortgage would release prior to the satisfaction of Triworld's indebtedness to Kleos." We observe that although the parties' stipulation required that Bozzacchi certify the collateral was insured "through at least December 31, 2011," there was no such temporal limitation attached to the mortgage alternative.